**TOWNSEND COMPANY et al., Plaintiffs-Appellants,**

v.

**M.S.L. INDUSTRIES and Universal Screw Company, Defendants-Appellees.**
No. 15068.

United States Court of Appeals
Seventh Circuit.

April 7, 1966.

Rehearing Denied May 2, 1966.

Edwin S. Booth, Chicago, Ill., Elmer S. Utzler and William H. Parmelee, Pittsburgh, Pa., for appellants.

Eli Mullin and Irwin C. Alter, Chicago, Ill., for appellees.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Townsend Company, is the exclusive licensee under patent number 2,761,347, "Fastener and Composite Sealing Washer Having a Deflectable Lip," issued September 4, 1956, to John R. McKee, Jr., now deceased, who assigned half of his interest in the patent to his brother, George. They granted an exclusive license to Fabricated Products Co., the name under which they engaged in business as a partnership, which later was changed to a corporation owned by them equally. That corporation in turn transferred its license along with its entire business to Townsend. Townsend joined George W. McKee and the heirs of John R. McKee, Jr., as plaintiffs in bringing action in the District Court seeking injunction and damages for infringement, plus attorneys' fees and costs.

On the basis of answers to interrogatories, depositions, documentary and physical exhibits, defendants, M.S.L. Industries and Universal Screw Company, moved for and were granted summary judgment from which this appeal is taken.

The District Judge noted in his findings of fact [1] that Exhibit 3, a washer of-

8. Plaintiffs have admitted that washers of which Exhibit 3 is an exemplar, such washers in combination with fasteners, and such combinations with pairs of connected work pieces, were manufactured, sold, publicly used and/or described in printed publications by one or more of them and/or their predecessor, Fabricated Products Co., more than one year prior to the filing date (July 30, 1953) of U.S. Patent No. 2,761,347.

9. Exhibit 3 is a composite metal and rubber sealing washer intended for mounting on a screw or bolt-type fastener. The metal portion has a central opening larger than the shank but smaller than the head of the fastener. The top face of the metal portion of the washer is adapted to bear against the bottom face of the head of the fastener. The rubber sealing portion is of substantially uniform thickness and extends coextensively with the metal portion. The rubber is bonded to the metal. A central opening extends through the rubber portion and is concentric with the central opening in the metal portion. The size of the central opening in the rubber is smaller than the opening in the metal and smaller than that of the fastener shank received therein. A portion of the rubber surrounding the central opening comprises an unbonded lip underlying the central opening of the metal portion and protrudes into the opening beyond the inner edges of said metal portion. This rubber lip is tapered.

10. Claim 1 of the patent in suit is representative of the claims contained therein and it reads as follows:

"1. A composite sealing element mounted on a fastener having a head portion and a shank portion, comprising a substantially flat backing member having a central opening extending therethrough of a diameter greater than the fastener shank portion and smaller than the head portion, said backing member having one face thereof providing a bearing for the fastener head portion, a resilient rubber like sealing member of substantially uniform thickness extending substantially coextensive with

fered and received in evidence without objection, was admittedly manufactured by Townsend, or its predecessor Fabricated Products, more than one year before the filing of the patent in suit. Exhibit 4, another washer offered and received in evidence without objection, is admittedly a specimen of the washer manufactured by Townsend or Fabricated Products in accordance with the claims of the patent in suit.

These physical exhibits are now before us. Our own examination leads us to the same conclusion reached by the District Court that, with minor inconsequential variations, Exhibit 3 is exactly like the washer defined in Claim 1 of the patent and anticipates it, and that

said backing member and bonded to the opposite face of the backing member, and opening extending through said sealing member concentric with the backing member opening and of a diameter less than that of the backing member opening and that of the fastener shank received therein, said sealing member forming an unbonded lip portion underlying the backing member opening and extending inwardly from the periphery of the backing member opening, said sealing member lip portion tapering from the periphery of the backing member opening to the periphery of the sealing member opening and providing an annular resilient portion deflected axially of the fastener shank below the adjacent body of the sealing member, which deflected annular portion grips the said shank and is substantially uniformly carried into an opening receiving the fastener shank forming an annular seal about the fastener shank within said opening therefor."

11. Careful examination of Exhibit 3 and comparison of the same with Claim 1 of Patent No. 2,761,347 leads the Court to find that with only minor, inconsequential variations, the washer of Exhibit 3 is exactly like the composite washer defined in Claim 1 and anticipates said claim.

12. Exhibit 4 is admitted to be a specimen of the composite sealing washer manufactured by the Plaintiff, Townsend Company or its predecessor, Fabricated Products Co. in accordance with the claims of the patent in suit, and said washer

Exhibit 4 differs in no material respect from Exhibit 3.

The District Court also found [2] that the U. S. Patent Office did not have Exhibit 3 before it although such Exhibit 3 was properly a part of the prior art, and that plaintiffs brought this action in bad faith.

Plaintiffs argue that although the witness George A. Bentley, an officer of Townsend, previously associated with Fabricated Products from 1962, admitted that Exhibit 3 was made and sold more than one year prior to the filing date of the patent in suit, he denied that it embodied the structure claimed in the patent, and that there is therefore a genuine issue as to a material fact. George W.

differs in no material respect from the washer of Exhibit 3.

\* \* \* \* \*

14. Claims 2 and 3, the remaining claims of the patent in suit, define a composite washer which is subtantially the same as Claim 1, except that Claim 2 is directed to a self-tapping screw-threaded fastener in combination with a washer, and Claim 3 is directed to the combination of a screw-fastener with a composite washer with the fastener extending through a pair of connected work pieces.

\* \* \* \* \*

2. 13. During the prosecution of the application for the patent in suit, the United States Patent Office did not have before it, did not know of, and did not consider the washer of Exhibit 3, which was in the public domain and therefore properly a part of the prior art.

\* \* \* \* \*

16. At the time of the filing of the law suit, Plaintiffs knew or should have known that the patent in suit was invalid because by their own admissions the washers comprising the primary subject matter thereof, alone or in combination with fasteners, had been made, sold, publicly used and/or described in printed publications by one or more of them and/or their predecessor (Fabricated Products Co.) more than one year before the filing date of said patent.

17. Bringing this action with the knowledge of the facts set forth in Finding No. 16, constitutes bad faith since there could not have been, at the time of filing the Complaint, reasonable belief in the validity of the patent in suit.

McKee also stated at one point that Exhibit 3 did not embody the tapered deflectable lip claimed in the patent in suit. He also testified that both Exhibits 3 and 4 were made on "progressive" dies and later said that such dies were not developed by him until 1952 with the first washers produced from those dies sometime in July of 1952. Yet Exhibit 3 was admittedly manufactured more than one year prior to the filing date.

■ The structures involved here are very simple. We need no experts to explain their operation. The District Court examined the physical exhibits. So did we. Notwithstanding the opinions of plaintiffs' witnesses to the contrary, it is clear to us, as it was to the District Court, that Exhibit 4 manufactured in accordance with the claims of the patent in suit differs in no material respect from Exhibit 3 which completely anticipates the patent in suit but which was never brought to the attention of the Patent Office, thus destroying the presumption of validity of the patent. Hobbs v. Wisconsin Power & Light Co., 7 Cir., 1957, 250 F.2d 100, 105. Even Mr. McKee was unable to distinguish between Exhibits 3 and 4 when their identifying labels were covered from view.

Washers of which Exhibit 3 was representative were sold as early as 1949 with markings "Patent Applied For." Mr. McKee testified that no patent had been applied for until 1952, but he and his brother were under a misapprehension as to the use of that terminology and so chose to use it until advised by company and patent counsel to discontinue doing so.

Under all the admitted circumstances, there was a basis for the District Court's determination that plaintiffs could have had no reasonable belief in the validity of the patent when they brought this suit.

■ We see no genuine issue as to a material fact. Summary judgment was appropriate in the circumstances of this case. Magee v. Coca-Cola Co., 7 Cir., 1956, 232 F.2d 596, 599; Davison Chemi-cal Corp. v. Joliet Chemical Co., 7 Cir., 1950, 179 F.2d 793, 795, cert. den. 340 U.S. 816, 71 S.Ct. 45, 95 L.Ed. 599.

The judgment of the District Court is affirmed.

Affirmed.