**MONOLITH PORTLAND MIDWEST COMPANY, a Nevada corporation, Appellant,**

v.

**KAISER ALUMINUM & CHEMICAL CORPORATION et al., Appellees.**

No. 21775.

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1969.

As Corrected Feb. 20, 1969.

---

**290**

James W. Geriak (argued), of Lyon & Lyon, Enright, Elliott & Betz, Los Angeles, Cal., for appellant.

William K. Rieber (argued), of Fulwider, Patton, Rieber, Lee & Utecht, Gordon Johnson of Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., for appellee.

Before BROWNING, ELY and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellant, Monolith Portland Midwest Company ("Monolith"), brought this action against the appellees, claiming misappropriation of its confidential business information and infringement of its pat-

ent. Monolith is a Nevada corporation, manufacturing cement in Laramie, Wyoming. Appellees ("Kaiser") are Kaiser Aluminum & Chemical Corporation, a Delaware corporation, Kaiser Aluminum & Chemical Sales, Inc., a California corporation, and three Kaiser employees. Kaiser supplies bricks and metal shims to cement companies such as Monolith.

After protracted discovery and an extended trial, judgment was rendered in favor of Kaiser on all counts. In addition, the District Court concluded that the case was "exceptional" within the meaning of 35 U.S.C. § 285, and Kaiser was awarded $280,000 attorney's fees.[1] Monolith appeals from the judgment, contending that the court erred in rejecting its claim for relief based on misappropriation of its trade secret and in awarding attorney's fees to Kaiser. We modify the award of attorney's fees by reducing the amount from $280,000 to $70,000, and we affirm the judgment as modified.

On June 6, 1958, Monolith filed its complaint, upon various legal theories, seeking relief for alleged misappropriation of business information disclosed in confidence to Kaiser. Federal jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. On September 8, 1959, Monolith amended and supplemented its complaint by adding a claim for patent infringement based upon the subsequent issuance to it of a patent upon the business idea described in the original complaint. Kaiser denied the allegations of the amended and supplemental complaint, raised the affirmative defense that the patent had been obtained by means of misrepresentations to the Patent Office, and asked for an award of reasonable attorney's fees.

The subject of the claimed trade secret and of the patent was the use of short-shimmed basic brick as lining for rotary cement kilns. Rotary kilns used in making Portland cement are generally lined with basic, as opposed to acid or non-basic, bricks. The portion of the bricks facing the interior of the kiln is called the "hot face," and the portion resting on the metal shell of the kiln is called the "cold face." Metal plates called "shims" are placed between the bricks to compensate for the expansion of the bricks as they are heated. Before the development of short shims, the general practice in the industry has been to place the shims in contact with the metal shell of the kiln.[2] Monolith alleged that its employee Anderson invented the concept of "short shimming" about September 14, 1953. The idea was to shorten the shims to prevent their contacting the metal shell of the kiln. The claimed utility of short shimming was to reduce the amount of heat transferred from the interior of the kiln to the metal shell. Anderson claimed that short shimming not only reduced the amount of fuel necessary to operate the kiln, but also increased the production of the kiln to an extent beyond that which would be expected merely from reducing the heat transference.

In the course of supplying brick and metal shims, Kaiser frequently gave technical advice to its customers and, in turn, received ideas from them. In 1953 employees of Monolith began discussing with employees of Kaiser both the idea of short shims and the idea of using radial rather than longitudinal shims. Longitudinal shims are those which are placed between the bricks in such manner that the shims run parallel to the length of the long rotary kiln. Radial shims are those which are placed between the rings of brick in such manner that the shims are perpendicular to the length of the kiln.

The idea of short shims was first used by Monolith at its Laramie kiln

1. Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp. (S.D.Cal. 1966) 267 F.Supp. 726.

2. A detailed description of the technical features of the manufacture of rotary cement kilns and of cement, together with a history of these arts, is contained in the District Court's opinion. Monolith Portland Midwest Co., *supra*, note 1.

in 1954. During 1955 Kaiser developed a basic brick for kilns which had a shim attached to it in a fashion which left a space between the longitudinal shim and the cold face. Kaiser called its new product "UNITAB." It is Kaiser's commercial sale of UNITAB which Monolith claimed was a misuse of confidential disclosures made by its employees to Kaiser and which it further claimed was an infringement of Monolith's patent. Also during 1955 Monolith and Kaiser discussed the possibility of Monolith's licensing to Kaiser the Anderson invention as a trade secret, or as a patent, if a patent subsequently issued. There is considerable evidence, however, that during those negotiations Kaiser thought the subject for licensing was radial shimming, not short shimming.

On February 4, 1955, the parent application for Anderson's patent was filed with the United States Patent Office, claiming the concept of short shimming. A continuation-in-part application was filed on December 26, 1956. The parent application was abandoned on July 7, 1957. Following extended proceedings in the Patent Office, the Patent Examiner rejected the patent. On April 23, 1959, the Board of Appeals overturned the Patent Examiner's decision and in the following July the patent issued on the continuation-in-part application. The written assignment to Monolith of all rights to the patent was filed in the Patent Office on December 26, 1956.[3]

## Trade Secret Counts

The District Court rejected Monolith's trade-secret case on the merits and on the ground that Monolith's claims were barred by the statute of limitations. Because we hold that the trade-secret claims were barred by limitations, we do not consider Monolith's assignments of error relating to the merits of that phase of the case.

The applicable statute, as both parties agree, is subdivision 1 of section 339 of the California Code of Civil Procedure, imposing a two-year limitation upon actions "upon a contract, obligation or liability not founded upon an instrument of writing." Monolith contends: (1) its cause of action did not accrue more than two years before the complaint was filed and (2) if the action did earlier accrue, its action was upon a continuing tort, for which it may recover damages sustained during the two-year period immediately preceding June 6, 1958, the date upon which the complaint was filed.

■ The District Court found that on June 9, 1955, Kaiser revealed to Monolith its sales to other cement companies of UNITAB bricks, embodying the short-shimming concept. Monolith does not deny that Kaiser's initial sale of UNITAB bricks was a breach of its alleged confidential relationship. It argues that its cause of action did not then accrue because it did not discover the adverse character of those sales until the following year. In the meantime, it believed that Kaiser's uses were experimental and for the benefit of both Kaiser and Monolith. The premise of the argument is that Monolith's knowledge of the breach is an element of its cause of action. The premise is wrong. Monolith's cause of action fully matured at the moment Kaiser first made adverse use or disclosure of the trade secret in violation of its confidential relationship. Accrual of its cause of action was not postponed to the date upon which Monolith discovered the breach. (Thompson v. California Brewing Co. (1957) 150 Cal.App. 2d 469, 310 P.2d 436.)

■ We also reject Monolith's contention that the statute of limitations does not bar recovery because the action is upon a continuing tort. Monolith's rationale, relying primarily upon Under-

---

3. While Monolith's employee Anderson is the actual patentee, Monolith, the assignee of the patent, was at all times the moving force behind the issuance of the patent. Therefore Monolith will hereafter be treated as the patentee in fact, especially in considering Monolith's conduct in the Patent Office proceedings.

water Storage, Inc. v. United States Rubber Co. (1966) 125 U.S.App.D.C. 297, 371 F.2d 950, is that the wrong is the adverse use of the secret disclosed in confidence; each use is a new wrong, and a continuing use is a continuing wrong. Underlying this theory is the concept that a trade secret is in the nature of property, which is damaged or destroyed by the adverse use. The law of the District of Columbia enunciated in *Underwater Storage, Inc.* is not the law in California. California law is, of course, controlling. California does not treat trade secrets as if they were property. It is the relationship between the parties at the time the secret is disclosed that is protected. (Futurecraft Corp. v. Clary Corp. (1962) 205 Cal.App.2d 279, 23 Cal.Rptr. 198.) The protected relationship, contractual or confidential, is one to which, as Mr. Justice Holmes observed, "some rudimentary requirements of good faith" are attached. "Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied, but the confidence cannot be. Therefore the starting point for the present matter is not property * * *, but that the defendant stood in confidential relations with the plaintiffs * * *." (E. I. Du Pont de Nemours Powder Co. v. Masland (1917) 244 U.S. 100, 102, 37 S.Ct. 575, 576, 61 L.Ed. 1016.) The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated. The cause of action arises but once, and recovery for the wrong is barred within two years thereafter unless the statute has been effectively tolled. (Thompson v. Cali-

fornia Brewing Co. (1957) 150 Cal.App. 2d 469, 310 P.2d 436.) The statute was not tolled,[4] and Monolith's claim for relief was foreclosed by limitations.

### Attorney's Fees

Monolith challenges the District Court's award of $280,000 attorney's fees to Kaiser, contending that as a matter of law the patent case was not "exceptional" within the meaning of 35 U.S.C. § 285, and that, even if the patent case were "exceptional," the court erred in failing to apportion the award of attorney's fees between the patent and nonpatent sides of the case.

The American rule is that attorney's fees are not recoverable as costs or damages in the absence of an express statute or an enforceable contract providing for them. (*E. g.*, Fleischmann Distilling Corp. v. Maier Brewing Co. (1967) 386 U.S. 714, 717–721, 87 S.Ct. 1404, 18 L.Ed.2d 475, affirming (9 Cir. 1966) 359 F.2d 156; Oelrichs v. Spain (1872) 82 U.S. (15 Wall.) 211, 230–231, 21 L.Ed. 43; Griggs v. Board of Trustees of Merced Union High School District (1964) 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722.) The general rule likewise applies to patent cases (Philp v. Nock (1873) 84 U.S. (17 Wall.) 460, 21 L.Ed. 679; Teese v. Huntingdon (1860) 64 U.S. (23 How.) 2, 16 L.Ed. 479; see Fleischmann Distilling Corp. v. Maier Brewing Co., supra, 386 U.S. at 720–721, 87 S.Ct. 1404), save for the provisions of 35 U.S.C. § 285: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

The present section 285 is a codification of the interpretation placed by the courts upon the prior statute.[5] Under

---

4. The District Court found "no conduct of the defendants or any of them, toward plaintiff was shown to constitute any variety of fraud and applicable statutes of limitation were not tolled hereby." This finding is not challenged on appeal.

5. Section 70 of the old Title 35 Patent Code, repealed in 1952, provided in part: "The court may in its discretion award

reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case." The Senate and House reports in 1952 comment on Section 285 of the new Title 35 Patent Code as follows: " 'in exceptional cases' has been added as expressing the intention of the present statute as shown by its legislative history and as interpreted

section 285 there are four statutory elements controlling an award of attorney's fees: (1) The party awarded attorney's fees must be the "prevailing party"; (2) attorney's fees may be awarded only in "exceptional" cases; (3) a court "may" award or deny attorney's fees in its discretion;[6] and (4) attorney's fees awarded must be "reasonable."

■ Kaiser unquestionably was the prevailing party, but was the patent case "exceptional"? Congress's intent in enacting the statute was not to permit recovery of attorney's fees routinely in patent cases, but to permit a court to award fees in an extraordinary case to prevent gross injustice. (Park-In-Theatres, Inc. v. Perkins (9 Cir. 1951) 190 F.2d 137, 142.)

The District Court's conclusion that the patent case was exceptional rested primarily upon its findings that Monolith obtained its patent in suit through misrepresentations to the Patent Office and that Monolith had unduly prolonged the litigation. Monolith contends that those findings were clearly erroneous and that its conduct before the Patent Office was not a basis upon which to hold exceptional the patent infringement action.

■ A patent applicant has a duty to the Patent Office to make a full and fair disclosure of all facts which may affect the patentability of his invention. A breach of that duty prevents the Patent Office from properly performing its function of preventing the issuance of unlawful patent monopolies. (Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co. (1945) 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381.)

A patent applicant's breach of duty to the Patent Office is relevant in determining not only the validity of his patent, but also his good faith in maintaining a subsequent infringement action. An applicant's fraud on the Patent Office is enough standing alone to convert his later infringement action into an exceptional case within the meaning of section 285. But conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional. Such conduct is a serious breach of the patentee's duty to the Patent Office. The party who succeeds in invalidating the unlawful patent performs a valuable public service. It is appropriate under such circumstances to reward the prevailing party by giving him attorney's fees for his efforts, and it is equally appropriate to penalize in the same measure the patentee who obtained the patent by his wrongdoing. (See Townsend Co. v. M.S.L. Industries (7 Cir. 1966) 359 F.2d 814; Dubil v. Rayford Camp & Co. (9 Cir. 1950) 184 F.2d 899, 902. Compare Hoge Warren Zimmermann Co. v. Nourse & Co. (6 Cir. 1961) 293 F.2d 779, 783–784.)

The District Court found that Monolith had made fraudulent representations to the Patent Office in four respects: (1) deliberate concealment of statutory bars; (2) falsehoods in a petition to make special; (3) misrepresentations about "unexpected results"; and (4) false statements of novelty in an affidavit by one Oscar Wicken procured by Monolith and filed in the Patent Office. Monolith argues that each of those findings is clearly erroneous. We examine the findings seriatim.

The District Court found that in 1955 Riverside Cement Company and Southwestern Portland Cement Co. ordered from Kaiser short-shimmed brick, which they installed in cement kilns. The court held that those were public uses or sales within the meaning of 35 U.S.C.

by the courts." U.S.Cong. & Admin. News, 82d Cong.2d Sess.1952, at 2423.

6. Hayes Spray Gun Co. v. E. C. Brown Co. (9 Cir. 1961) 291 F.2d 319, 327;

Kemart Corp. v. Printing Arts Research Laboratories, Inc. (9 Cir. 1959) 269 F. 2d 375, 394; Talon, Inc. v. Union Slide Fastener, Inc. (9 Cir. 1959) 266 F.2d 731, 739.

§ 102,[7] and hence statutory bars to the patent because they occurred over a year prior to the filing of the continuation-in-part application in the Patent Office on December 26, 1956. The District Court also found that employees of Monolith knew about those public uses or sales and failed to disclose them to the Patent Office.[8]

Monolith argues on two grounds that it did not fraudulently conceal statutory bars. First, it argues that it believed in good faith that the 1955 sales and uses were not statutory bars because the *sales* were only of short-shimmed brick, not of the invention itself, which consists of the unit of a kiln lined with short-shimmed, uniform, basic brick, and the *uses* were only trials or experiments, not "public" uses. Second, Monolith argues that it believed that its continuation-in-part application would be related back to the date of the parent application because the continuation-in-part application did not introduce new matter undisclosed in the parent application.[9] Monolith also argues that it revealed the Southwestern use to the Patent Office and that the omission of the Riverside use was immaterial because that use did not differ from Southwestern's.

We need not resolve the question whether the 1955 uses were statutory bars because Monolith does not challenge the court's determination that its patent was invalid. Whatever theory Monolith may have had in mind about the legal effect of the 1955 uses, it failed to disclose openly and fully the underlying facts to the Patent Office. At the least, Monolith knew that those facts might affect the patentability of the invention. We agree with the District Court that failure to disclose the 1955 uses, standing alone, would not have rendered the suit exceptional.[10] Monolith's behavior,

---

7. "A person shall be entitled to a patent unless * * * (b) the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *."

8. Finding No. 121: "In October of 1958, Plaintiff, through its agents, including Rentsch, made a survey of cement plants in Southern California by which Plaintiff and Rentsch in particular determined with particularity: (a) That Kaiser's UNITAB type of spaced shim installation of which Plaintiff had been advised as early as June 1955, had been continuously in commercial use since a time more than one year prior to the filing date of the Continuation-in-Part application. * * *"

9. 35 U.S.C. § 120 provides in part: "An application for patent for an invention disclosed [as provided in 35 U.S.C. § 112] * * * in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application * * *."

In the District Court the issue was whether Monolith's addition of "basic brick" and of "substantially uniform physical and chemical composition throughout" added new matter. The additions were apparently made to distinguish Monolith's claims from those of a prior patent issued to one Heuer. Heuer proposed installation of a kiln by a lining composed of acid brick in contact with the cold face supporting an attached basic brick on the hot face. The metal shim extended over the side faces of the basic portion of the compositive brick, and the shim was out of contact with the shell.

10. Monolith argues that the District Court did not find any of these charges to have been established but merely used "four unproven charges to construct a single charge of fraud as genuine." In Finding No. 129 the District Court stated that "an acceptable explanation may be plausible when each small point is isolated from the others, but when the picture is viewed in its entirety, including the plaintiff's own contemporaneous documents and business records, the fact that the Patent Office was not told the then known truth is inescapable." The challenged finding merely indicates that no one of the four findings of misrepresentation alone may have rendered the patent claim "exceptional", but together they did so. The finding does not indicate that the District Court failed to find that any of the four misrepresentations had been established by the evidence.

while lacking in candor, was still consistent with a belief that the 1955 sales were infringements of the patent it hoped to obtain. But nondisclosure of the 1955 sales and uses did cast a shadow on the purity of Monolith's state of mind during the proceedings in the Patent Office.

In November of 1957 Monolith filed its petition to make special with the Patent Office, seeking to accelerate consideration of the patent application on the ground that Kaiser was engaged in infringing activity. The Patent Office initially rejected Monolith's petition because it failed to allege when Monolith first discovered the infringing article. Monolith's employee Rentsch filed an affidavit stating that in 1955 he was not aware that Kaiser had manufactured the alleged infringing UNITAB and further stating that it was difficult in the industry to determine whether and when certain kinds of shimmed brick were being used or sold. The District Court found that these representations were deliberate lies and that other employees of Monolith were aware of Kaiser's 1955 sales of short-shimmed brick. In the same affidavit Rentsch also stated that Kaiser's UNITAB was an outgrowth of license negotiations between Monolith and Kaiser in June of 1955. The evidence showed that during the referenced negotiation Kaiser revealed to Monolith the UNITAB installation at Victorville, and the court concluded that Rentsch's representation to the contrary was false.

Monolith attempts to explain those misrepresentations to the Patent Office on the ground that the representations were not material because the sole purpose of the petition was to accelerate a patent application. It may be true that the misrepresentations did not relate to an ultimate fact, but the use of willfully false testimony cannot be fully rinsed away with a solution composed primarily of legal semantics.

The District Court found that the Board of Appeals in the Patent Office overruled the Examiner and granted the patent principally upon the representations in three affidavits by Rentsch that the invention resulted in unexpected and surprising increases in production. Rentsch computed how much heat could be expected to be saved by preventing heat transference with the use of short shims. He stated that an increase in production anticipated from the heat saving would be about three barrels of cement per day in Monolith's Laramie kiln. He represented that the actual increase in kiln production was thirty times more than was expected. He qualified his representation by noting that "several changes were made in the kiln which might affect the rate of production in this kiln to what I consider a minor extent." He nevertheless stated his opinion that the increase in kiln production was a direct result of short shimming. In fact, it was later shown that most of the increase of production at the Laramie kiln was due to changes other than short shimming. The District Court found that Rentsch's representations of unexpected results were false. Those representations were discredited principally by Monolith's own documents, which attributed only nineteen barrels of increase in production to the use of short shims. In reviewing the record we find that there is abundant evidence to support the trial court's conclusion that Rentsch misrepresented the "unexpected results" of short shimming, and that those misrepresentations were a crucial factor in Monolith's obtaining its patent.

In September of 1958 Monolith filed with the Patent Office the affidavit of Oscar M. Wicken, an employee of Harbison-Walker Refractories Company. Wicken averred that he was familiar with Monolith's patent application and with the Laramie installation of short-shimmed bricks. He said that the Anderson invention had "all the elements of a meritorious and patentable invention." He also stated that in early 1955 short shims would have been "contrary to manufacturers' recommendations." The District Court found that Mr. Wicken

knew that short shims had been used prior to 1955 in both magnesite and lime rotary kilns. The District Court also found that Wicken's affidavit was drafted by Monolith's employees, who thereafter obtained Wicken's signature on statements to which he did not intend to subscribe. The District Court also found, contrary to Monolith's representation to the Patent Office, that Wicken was not an impartial witness because Wicken's company hoped to obtain orders of brick from Monolith.

Each of the above four challenged findings is supported by the record. Taken together, they evidence a course of conduct by Monolith which, if not properly characterized as actually fraudulent, reveals a calculated recklessness about the truth and which constitutes a serious breach of duty to the Patent Office. The findings adequately support the District Court's conclusion that the patent side of the case was exceptional.

The second category of factual findings which led the District Court to hold the case exceptional concerned Monolith's prolongation of the litigation. Since we hold that conclusion of the District Court was sustained on the prior ground, it is unnecessary for us to review the findings of undue prolongation. We do note, however, that many of the District Court's findings about prolongation are directed more to the lack of cooperation of Monolith's counsel than to the lack of good faith on the part of Monolith.[11] The purpose of section 285 is not to discipline uncooperative counsel or counsel who is overzealous in the advocacy of his client's claims. (See Park-In-Theatres v. Perkins, *supra,* 190 F.2d at 143.) If a patent case is found

to be exceptional on other grounds, the amount of reasonable attorney's fees awarded will be affected by the length of the litigation, and prolonging tactics by the losing party's counsel may thus increase the award.

Although we sustain the District Court's determination that the patent side of the case was exceptional, we conclude that the award of $280,000 attorney's fees is excessive. The action combined both patent and nonpatent claims. The authority to award attorney's fees found in 35 U.S.C. § 285 is limited to the patent side of the case. (See Talon, Inc. v. Union Slide Fastener, *supra,* 266 F.2d 731; Dubil v. Rayford Camp & Co. (9 Cir. 1950) 184 F.2d 899, 902; Burnett v. Lambino (S.D.N.Y. 1962) 206 F.Supp. 517; Eisman v. Samuel Goldwyn (S.D.N.Y.1938) 23 F.Supp. 519, reversed on other grounds, Dellar v. Samuel Goldwyn (2 Cir. 1939) 104 F.2d 661.) If an action combines patent and nonpatent claims, no award of fees pursuant to section 285 can be allowed for litigating the nonpatent issues. Neither Monolith nor Kaiser really quarrels with that rule. The differences between them arise principally because the patent and nonpatent issues in this case were intermingled and the bulk of the evidence prepared and presented at trial was material to both kinds of issues. Although some of the legal services can be considered clearly patent work and some clearly nonpatent work, a large portion can only be described as "mixed."

The District Court based its award on all the patent services in the case plus all the "mixed" services. The statute does not require the District Court to assign all the "mixed" services to the patent side in making an award of fees,

---

11. The court listed the following examples of undue prolongation by Monolith: deliberate refusal to file its pretrial memorandum of contentions of fact and law as required by local rules, refusal to cooperate in the pretrial conference, concealment from the District Court of the purpose of Monolith's examination of certain witnesses, and the grounds, if any, for objection, adoption of extreme positions and strained constructions, and the failure to concede obvious facts.

The District Court also found that Monolith unduly prolonged the litigation by continuing to press its patent claim after discovering facts which were not known to it when it filed its patent claim and which substantially diminished its chances for success.

and, under the circumstances of this case, it was error for the District Court to do so.

A flat rule attributing all "mixed" services to a patent side of a combined patent-nonpatent action would unduly discourage and penalize the joinder of patent and nonpatent claims and the maintenance of good-faith nonpatent litigation in which patent claims could be injected. That effect would not comport with the intent of Congress in enacting section 285. The District Court explicitly decided that "suit [on the nonpatent claim] was not initiated in bad faith and it had to be defended." Under these circumstances, a reasonable award of attorney's fees under section 285 should attribute only a fair portion of the "mixed" services to the patent side of the case.

Kaiser argues that, even if the District Court's award exceeded its authority under section 285, the award should nonetheless be sustained as an appropriate exercise of the District Court's "general equity power" to award fees in nonpatent cases "when such claims are unconscionable, the equivalent of fraud, in bad faith or solely for purposes of vexation and harassment." (Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., *supra*, 267 F.Supp. at 789). We reject the argument. There is no general federal rule or policy favoring an award of attorney's fees to prevailing defendants in nonpatent cases. The general rule both in the federal courts and in California is to the contrary, and this case does not fall within any of the recognized exceptions to the general rule.

It is unnecessary to remand this already protracted litigation to the District Court for a new determination of the amount of fees appropriate to Kaiser's defense of the patent issues in this case. Appellate courts possess the power to reduce the amount of statutory awards of reasonable attorney's fees. (Orgel v. Clark Boardman Co. (2d Cir. 1962), 301 F.2d 119, 122.) One of the primary reasons for the policy against awarding attorney's fees is to avoid the substantial burden on judicial administration which would be created by the "time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees." (Fleischmann Distilling Corp. v. Maier Brewing Co., *supra*, 386 U.S. at 718, 87 S.Ct. at 1407, 18 L.Ed.2d 475; see Oelrichs v. Spain, *supra*, 82 U.S. (15 Wall.) at 231, 21 L.Ed. 43.) Even where that policy has been altered by statute, the issue of reasonable fees should be settled in the most expeditious manner possible. From our independent review of the record in this case, we have concluded that an award of reasonable attorney's fees attributable to the patent issues in this case is $70,000.

Our disposition of the primary issues in the case makes it unnecessary to discuss the remaining contentions of the parties.

The judgment is modified by reducing the award of attorney's fees from $280,-000 to $70,000, and as modified, the judgment is affirmed.