CONVERGENCE CORPORATION, a California corporation, Plaintiff,

v.

VIDEOMEDIA, a California corporation, Defendant.

CONVERGENCE CORPORATION, a California corporation, Plaintiff,

v.

CEZAR INTERNATIONAL, LTD., a California corporation, Defendant.

Nos. C–80–0786 WHO, C–80–0787 WHO.

United States District Court, N. D. California.

April 15, 1981.

Supplemental Opinion and Order May 6, 1982.

Jack M. Wiseman, Francis W. Anderson, Wiseman & Anderson, San Jose, Cal., Eugene J. Albertini, Albertini & Gill, Los Angeles, Cal., Keith D. Beecher, Jessup & Beecher, Santa Monica, Cal., for plaintiff.

Robert W. Dilts, Carlisle M. Moore, Hubert E. Dubb, Martin C. Fleisler, Phillips, Moore, Weissenberger, Lempio & Majestic, San Francisco, Cal., David L. Nevis, Miller, Morton, Caillat & Nevis, San Jose, Cal., for defendant.

### OPINION

ORRICK, District Judge.

Defendants in these related patent infringement actions have moved for summary judgment against the plaintiff on the basis of a judgment invalidating plaintiff's patent in the Central District of California. One defendant additionally has moved for an award of attorney's fees pursuant to 35 U.S.C. § 285. Plaintiff has moved to stay these proceedings pending a decision by the Ninth Circuit of its appeal from the earlier action. The Court declines to stay these proceedings, grants summary judgment in favor of the defendants, and denies defendant Videomedia's motion for an award of attorney's fees.

### I

Plaintiff, Convergence Corporation, a manufacturer of a video tape editing machine, sued defendants Videomedia, Inc. and Cezar International, Ltd., manufacturers of similar machines, in separate actions for infringement of plaintiff's patent on its video tape editor. Both defendants have filed counterclaims based on plaintiff's alleged violations of the Sherman Act. This Court determined that these cases were related on March 24, 1980.

On January 7, 1981, Judge Pfaelzer of the Central District of California entered judgment against plaintiff in a similar action, *Convergence Corp. v. Sony Corp. of Ameri-*

ca, No. CA 78–0359 (C.D.Cal., Jan. 7, 1981). The Central District judgment invalidated plaintiff's patent on the ground that its subject matter was previously invented by other parties and that the differences between its subject matter and earlier manufactured video tape editors was obvious to a person having ordinary skill in the art involved. Defendants in these related actions now seek summary judgment in their favor on the basis of the collateral estoppel effect of this judgment. Plaintiff has filed an appeal of the Central District judgment.

## II

■ Plaintiff seeks to stay these proceedings pending a decision by the Ninth Circuit of its appeal from the Central District judgment. It is a well-established general rule, however, that pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata* or collateral estoppel. 1B Moore's Federal Practice ¶ 0.416[3]. Plaintiff has demonstrated no special grounds that should render this general rule inapplicable.[1] While plaintiff must proceed to trial and mount a defense to the counterclaims in these actions, plaintiff opened itself to this possibility in initiating these actions. For these reasons, and in the interest of a prompt disposition of the claims of the parties, the Court declines to stay these actions.

## III

■ The Court grants defendants' motions for summary judgment in reliance on *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In *Blonder Tongue*, the Supreme Court determined that a plaintiff is estopped from asserting the validity of a patent that has been declared invalid in a prior suit against a different defendant unless the plaintiff did not have a full and fair opportunity to litigate the validity of his patent in the prior suit. District court decisions are a sufficient basis for applying the estoppel. *Bourns, Inc. v. United States*, 537 F.2d 486, 490, 210 Ct.Cl. 642 (1976); *Iron Ore Co. of Canada v. Dow Chemical Co.*, 177 U.S.P.Q. 34 (D.Utah 1972), *aff'd*, 500 F.2d 189 (10th Cir. 1973), and the estoppel may be asserted through a motion for summary judgment so long as there are no genuine issues of material fact to be decided. *Bourns*, 537 F.2d at 490.

■ In extending collateral estoppel effect to the earlier judgment, however, the Supreme Court provided a safeguard against improvident invalidation of patents by allowing the patent owner the chance to demonstrate that "he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder Tongue*, 402 U.S. at 333, 91 S.Ct. at 1445. In making this determination, the district court is to look to a variety of factors, including whether the patent owner had a choice of forum or was deprived of crucial evidence or witnesses in the first litigation through no fault of his own. The patent owner may also show that the district court in the earlier action "wholly failed to grasp the technical subject matter." *Id.* at 333–34, 91 S.Ct. at 1445.

■ Defendant Videomedia has supplied the Court with uncontroverted evidence that the litigation of the validity of plaintiff's patent in the Central District was full and fair. The plaintiff was in a forum and litigating against a defendant of its own choosing. Plaintiff's ample preparation to litigate the issue is shown by the joint pretrial statement in which plaintiff listed five witnesses and thirty-six exhibits as part of

1. It does not appear that plaintiff's rights will be unduly prejudiced by entry of summary judgment in these actions. If plaintiff wishes to appeal this Court's ruling, it may file a statement of related case with the Ninth Circuit pursuant to Rule 13(j)(4) of the Rules of the United States Court of Appeals for the Ninth Circuit. Even if plaintiff does not appeal these judgments, it may move this Court for relief from these judgments under Federal Rule of Civil Procedure 60(b)(5) in the event that the Ninth Circuit should reverse Judge Pfaelzer's determination of invalidity. *See, e.g., Iron Ore Co. of Canada v. Dow Chemical Co.*, 177 U.S. P.Q. 34 (D.Utah 1972); *see* 1B Moore's Federal Practice ¶ 0.416[4] at 2282–83.

its evidence at trial.[2]  The length of the trial, four days, also supports this conclusion.  The findings of fact and conclusions of law entered by Judge Pfaelzer show that the court in the previous action did not fail to grasp the technical subject matter of the patent at issue and that plaintiff's claims were given full consideration.  Finally, plaintiff has not presented any evidence suggesting that a genuine issue of fact exists concerning its opportunity to litigation before Judge Pfaelzer.

Since defendants have demonstrated that the patent which is the subject of these infringement actions was invalidated following a full and fair opportunity to litigate the validity of the patent, the Court grants defendants' motions for summary judgment in these related actions.

IV

The Court denies defendant Videomedia's motion for attorney's fees.  35 U.S.C. § 285 provides that "[t]he court in exceptional cases [regarding patent invalidation or infringement] may award reasonable attorney fees to the prevailing party."  An award of attorney's fees under § 285 is, as indicated by the plain language of the statute, the exception rather than the rule.  The Ninth Circuit has stated that:

"The trial court's discretion in awarding attorney's fees in patent cases may be invoked only upon a finding of bad faith or inequitable conduct on the part of the losing party which would make it grossly unjust for the prevailing party to be left with the burden of his litigation expenses."  *Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297, 300 (9th Cir. 1976).

A case can be shown to be "exceptional" by demonstrating that the patentee breached its duty to make a full and fair disclosure to the Patent Office of all facts which may affect the patentability of the invention.  *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 294 (9th Cir. 1969).  Conduct short of fraud and in excess of simple negligence

is an adequate foundation for deciding that a patent action is exceptional.  *Id.*  But it is still necessary to show an element of intent beyond mere knowledge on the part of the patentee of facts that have some bearing on the patentability of the invention.  The person seeking invalidation must show some element of willfulness or intentional nondisclosure before the patentee's conduct can rise to the "bad faith" status in which attorney's fees are appropriate.  *Id.* at 295; *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1358–59 (9th Cir. 1980); *Carpet Seaming Tape Licensing Co. v. Best Seam, Inc.*, 616 F.2d 1133, 1140 (9th Cir. 1980); *Bates Industries, Inc. v. Daytona Sports Co.*, 310 F.Supp. 311, 317 n.25 (C.D.Cal.1969), aff'd, 441 F.2d 1110 (9th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (1971).  Thus, a simple showing that the patentee, prior to filing his application for a patent, saw a product which constituted "prior art" and which ultimately was the basis for invalidating his own patent, is not sufficient to show bad faith since it does not show that the patentee intentionally failed to disclose the existence of the earlier product.  *Id.*  Similarly, a demonstration that the patentee "knew or should have known" of the pertinence of a prior invention or the falsehoods in affidavits accompanying his patent application is not sufficient to show bad faith absent some additional showing of intentional nondisclosure or falsehood that takes the patentee's conduct out of the realm of simple negligence.  *Mayview*, 620 F.2d at 1358–59.

As in *Bates* and *Mayview*, the undisputed facts in this case show only that plaintiff knew of the existence of defendant Videomedia's video editor, and should have known it constituted prior art.  Without more, this knowledge does not demonstrate the intentional nondisclosure necessary to constitute bad faith.  At best, the evidence of plaintiff's continuing nondisclosure does no more than "cast a shadow on the purity of [plaintiff's] state of mind during the proceedings in the Patent Office" and before this Court, *Monolith Portland*,

**2.** Defendant Videomedia's exhibits, amended pretrial conference order at 9–14.

407 F.2d at 296, a showing insufficient by itself to render a case "exceptional" within the meaning of § 285.

## V

The Court having considered the parties' briefs and evidence submitted in support of these motions,

IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is granted.

2. Plaintiff's motion for a stay in these proceedings is denied.

3. Defendant Videomedia's motion for an award of attorney's fees is denied.

4. In proceeding to trial on defendants' counterclaims, the parties will adhere to the schedule set forth in the pretrial order filed on January 6, 1981.

## SUPPLEMENTAL OPINION AND ORDER

In this patent case involving the issue whether it is an exceptional case within the meaning of 35 U.S.C. § 285[1] meriting an award of reasonable attorneys' fees, the central question raised by cross-motions for summary judgment is whether this defendant may rely upon the doctrine of collateral estoppel by prior judgment to prove its case under the special circumstances here present. For the reasons stated below the Court answers this question in the affirmative and, therefore, grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

## I

Plaintiff, Convergence Corporation ("Convergence"), is the owner by assignment of U.S. Patent No. 4,040,098 issued to Gary H. Beeson and William D. Skinner, the co-inventors, on August 2, 1977. The patented device is a video tape edit control system that allows an editor to view both source and new tapes in either fast or slow motion, including forward and reverse, and in still frame.

Convergence brought this suit for patent infringement against defendant, Videomedia, on March 13, 1980. At the time this action was filed there were already pending in the Central District of California two similar infringement actions that had been brought by Convergence against Sony Corporation of America and Datatron, Inc. Those cases had been consolidated for purposes of trial.

On January 7, 1981, shortly before trial was scheduled to commence in this case, Judge Pfaelzer of the United States District Court for the Central District of California entered judgment on the issue of the patent's validity in *Convergence Corp. v. Sony Corp. of America*, Civil No. 78–0359 (C.D.Cal. Jan. 7, 1981). Judge Pfaelzer found the patent invalid under 35 U.S.C. §§ 102(a), 102(g), and 103 on the grounds that its subject matter was previously invented by other parties and that the difference between its subject matter and earlier manufactured video tape editors was obvious to a person having ordinary skill in the art involved.

Videomedia shortly thereafter moved for summary judgment here on the patent validity issue, and for an award of attorneys' fees pursuant to 35 U.S.C. § 285. In an Opinion and Order filed on April 15, 1981, this Court granted Videomedia's motion for summary judgment on the validity issue on the basis of the collateral estoppel effect of the judgment in the Central District. The Court denied, however, the motion for an award of attorneys' fees on the grounds that the uncontested facts then before it failed to establish willful or intentional nondisclosure towards the Patent Office constituting bad faith by plaintiff.

A separate, subsequent trial was held in the Central District addressing the evidence of plaintiff's alleged lack of candor in its dealings with the Patent Office. On October 5, 1981, final judgment was entered in

---

1. 35 U.S.C. § 285 provides:
   "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

*Convergence Corp. v. Datatron, Inc.*, Civil No. 77–4019 (C.D.Cal. Oct. 5, 1981) (hereinafter cited as "*Datatron*"), in which Judge Pfaelzer held that the case was exceptional under 35 U.S.C. § 285 on the basis of certain findings that plaintiff had in several instances failed to disclose known prior art to the Patent Office.

Videomedia thereupon renewed its motion here for summary judgment on the exceptional case issue on the strength of the collateral estoppel effect of this second judgment entered by the Central District.

## II

■ The threshold question before the Court is whether the doctrine of collateral estoppel can be asserted by a defendant in a patent suit on the issue of whether a case is exceptional within the meaning of 35 U.S.C. § 285 where that issue has been previously adjudicated in a separate action brought by the same plaintiff-patentee against a different defendant.

At the outset, Convergence correctly notes that the Supreme Court in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), was concerned solely with the availability of such a defense on the issue of a patent's validity. Convergence is incorrect, however, in assuming that the reasoning and the principles behind the Supreme Court's affirmance of the estoppel doctrine should be narrowly limited to the validity issue. Because neither the parties' briefs nor the Court's independent research have disclosed any cases which squarely address the question posed above, the Court turns for guidance to the principles expressed in *Blonder-Tongue* and in the cases cited approvingly therein.

In his scholarly and thoughtful opinion Justice White observed that the strict mutuality requirement of the doctrine of *res judicata*,[2] first enunciated in *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), has been "under fire" almost since the time of its announcement. *Blonder-Tongue, supra*, 402 U.S. at 322, 91 S.Ct. at 1439. Within six years the California Supreme Court, speaking through Justice Traynor, unanimously rejected the mutuality rule. "Just why a party who was not bound by a previous action should be precluded from asserting it as *res judicata* against a party who was bound by it is difficult to comprehend." *Bernhard v. Bank of America National Trust & Savings Ass'n*, 19 Cal.2d 807, 812, 122 P.2d 892, 895 (1942). *Bernhard* has had a substantial impact, and a significant number of state and federal courts have since followed its logic.[3] Judge Hastie captured the essence of the critical commentary in stating that:

> "[A] party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result * * *."

*Bruszewski v. Unites States*, 181 F.2d 419, 421 (3rd Cir. 1950), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

In modifying the mutuality rule of *res judicata* in patent validity actions, the Supreme Court identified several general reasons underlying its decision. Among them were the beneficial effect upon efficient judicial administration by the reduction of crowded dockets and long delays preceding trial, the restriction of a litigant to one full

**2.** The cases addressing this question alternatively employ the terms *res judicata*," "collateral estoppel," and "estoppel by prior judgment" to apply to the same underlying fact pattern where a litigant, not a party to an earlier action, seeks to rely on a judgment entered there to later bind a litigant who was a party to the prior action. For our purposes here, the Court considers the terms to be synonymous.

**3.** For an extensive listing of those courts which have followed *Bernhard v. Bank of America National Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942), *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 325 n.13, 326 n.14, 91 S.Ct. 1434.

and fair opportunity for judicial resolution of the same issue which would eliminate the "gaming table" element of multiple litigation and forum shopping, and the elimination of a misallocation of resources by both plaintiffs and defendants alike. *Blonder-Tongue, supra*, 402 U.S. at 328–329, 91 S.Ct. at 1442–1443.

With specific reference to patent litigation, the Supreme Court echoed Judge Frank's observation that patent defense is an extremely costly undertaking, imposing a burden "often staggering to the small businessman." *Id.* at 334, 91 S.Ct. at 1445, *quoting Picard v. United Aircraft Corp.*, 128 F.2d 632, 642 (2d Cir. 1942) (concurring opinion). This burden most often falls "during the period when he may be least able to afford [it]." *Id.* Patent litigation also invariably demands "an inordinate amount of trial time." *Id.* at 337, 91 S.Ct. at 1447. Moreover, the Supreme Court recognized that the economic consequences of multiple infringement suits were not limited to a defendant's litigation expenses. Defendants, confronted with expensive proof burdens and a presumption of patent validity, will often be compelled to enter into nuisance settlements or licensing agreements instead of defending an infringement claim on the merits. *Id.* at 338, 342–343, 91 S.Ct. at 1447, 1449–1450. Finally, the public interest is served by private vigilance which keeps patent monopolies "within their legitimate scope." *Id.* at 343, 91 S.Ct. at 1450.

Applying these principles and observations to the question posed above, the Court finds that there are substantial reasons militating in favor of the conclusion that the doctrine of collateral estoppel by prior judgment should be available to a defendant on the exceptional case issue. Initially, where the patent's validity has already been decided on the basis of the collateral estoppel effect of a prior judgment, *de novo* litigation of the exceptional case issue would plunge the trial court anew into many of the same complex issues which had already been adjudicated in the validity phase of the earlier infringement action. *Cf. Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297, 300 (9th Cir. 1976) (undisclosed knowledge of prior art relevant to both validity and exceptional case issues). Such a course of action would generate duplicative costs in terms of time and financial resources for both the courts and the parties. Likewise, relitigation of the exceptional case issue without good cause would give plaintiffs more than one bite at a "full and fair opportunity" for judicial resolution of that issue. The parties would be gambling that different courts would arrive at divergent resolutions of that question.

The most persuasive reason, however, springs out of the Supreme Court's recognition of the leverage that a patent plaintiff gains for inducing nuisance settlements and licensing agreements simply by filing, or threatening to file, an infringement action. The availability of the doctrine of collateral estoppel on the validity issue alone does little to relieve defendants faced with unmeritorious actions of the financial burden of going forward on the validity claims, nor does it relieve them of the additional cost burden of establishing the right to recover costs in exceptional cases. Malicious plaintiffs could exercise leverage by filing multiple infringement actions and forcing a defense when they know that each defendant must still incur extensive litigation costs even to attempt to prevail on the exceptional case issue and to recover their initial outlays. The application of the doctrine of collateral estoppel by prior judgment to the exceptional case issue provides a salubrious corollary to the holding in *Blonder-Tongue* for effectuating the policies expressed in that decision.

This conclusion is borne out by the Supreme Court's recognition of the beneficial role that awards of reasonable attorneys' fees play in "inhibit[ing] repetitive suits on invalid patents." *Blonder-Tongue, supra*, 402 U.S. at 347, 91 S.Ct. at 1452. The Supreme Court noted, however, that the provisions of § 285

"can[not] operate until after litigation has occurred, and the outlay required to try a lawsuit presenting validity issues is

the factor which undoubtedly forces many alleged infringers into accepting licenses rather than litigating."

*Id.* at 347–348, 91 S.Ct. at 1452. To the extent that the availability of collateral estoppel on the attorneys' fees issue will realign the risks associated with those "outlays," this Court's decision will advance the deterrent function of § 285 identified by the Supreme Court.

Some additional discussion is warranted due to this Court's recognition that it is herein authorizing a plea of collateral estoppel in what might be termed an "offensive use" context. The Supreme Court addressed the question of the estoppel doctrine in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1978), and concluded that:

"the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied."

Several specific concerns of fairness were identified against which the trial court should guard and which should guide its discretion. None of them are applicable to the situation here.

First, Justice Stewart stated that parties plaintiff might adopt a "wait and see" attitude, relying on previous adverse judgments against a defendant while they are not bound by any prior judgments in favor of a defendant. *Id.* at 330, 99 S.Ct. at 651. The situation before the Court is materially different in that defendant here did not initiate the action. The estoppel plea has only been raised as an affirmative defense on the attorneys' fees issue. Likewise, the second concern that a party would not vigorously prosecute an initial action involving a claim for minimal damages is inapposite in this situation because attorneys' fees awards in patent cases invariably involve substantial sums of money, thus giving plaintiffs every incentive to litigate aggressively in all cases. *Id.* Nor does this situation give rise to the concerns of a inconvenient forum or an absence of procedural op-

portunities because those choices originally lay with the plaintiff. *Id.* at 331 n.15, 99 S.Ct. at 651. This Court finds, as did the *Parklane* Court, that "none of the considerations that would justify a refusal to allow the use of offensive collateral estoppel is present in this case." *Id.* at 332, 99 S.Ct. at 652.

Finally, courts in the Ninth Circuit have long recognized and approved of collateral estoppel by prior judgment. *Cf. United Air Lines, Inc. v. Weiner*, 335 F.2d 379, 404 (9th Cir. 1964); *Technograph Printed Circuits, Inc. v. Packard Bell Electronics Corp.*, 290 F.Supp. 308, 318 (C.D.Cal.1968). The doctrine has been seen as an adjunct to Rule 1 of the Federal Rules of Civil Procedure in securing "just, speedy, and inexpensive determination of every action," and in recognition that the " 'law is a rule of action,' " and that there must some day be an end to litigation." *Technograph, supra,* 290 F.Supp. at 318.

### III

Having determined that collateral estoppel by judgment entered in *Datatron* is available to Videomedia on the exceptional case issue, the Court turns to an examination of the nature and scope of the inquiry it must perform under the applicable law.

■ Once the plea of estoppel is raised, it is incumbent upon the opposing party "to argue, if he can, why the imposition of an estoppel would be inappropriate." *Blonder-Tongue, supra,* 402 U.S. at 350, 91 S.Ct. at 1453. The critical inquiry is whether the party against whom the estoppel is asserted had a "fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Id.* at 333, 91 S.Ct. at 1445. In making this determination the district court should consider whether the party sought to be estopped had a choice of forum, whether it had an incentive to litigate, whether it was deprived of crucial evidence through no fault of its own, and whether the prior court wholly failed to grasp the technical subject matter. *Id.* at 333–34, 91·S.Ct. at 1445.

Convergence fails to address any of these relevant criteria. It instead maintains that Videomedia cannot assert a plea of estoppel and that this Court must conduct an independent inquiry into whether the facts adduced in the Central District proceedings support a finding of conduct that would give rise to an award of attorneys' fees under § 285. Stripped to its bones, Convergence's argument represents no more than a collateral attack upon Judge Pfaelzer's findings that the knowledge in its possession constituted knowledge of relevant prior art, as a matter of law, such that its failure to disclose it was a serious enough breach of the duty of candor due the Patent Office to constitute an exceptional case. Convergence has made no showing, within the contours of the applicable law, why the imposition of an estoppel would be inappropriate.

Videomedia, on the other hand, has presented uncontroverted evidence that the litigation on the exceptional case issue in the Central District was "full and fair." Convergence was in a forum and litigating against a defendant of its own choosing. There was an ample incentive to litigate vigorously because the attorneys' fees at stake in *Datatron* were in excess of $100,000. Convergence had an extensive opportunity to present its case to the court. There is no indication that Judge Pfaelzer failed to grasp the technical subject matter at issue, nor is there any evidence that Convergence was deprived of crucial witnesses or evidence. Finally, Convergence has had multiple opportunities to offer new evidence to the Court and, having failed to do so, it must be assumed that no such new evidence exists.

Because there is no genuine issue of material fact concerning Convergence's having had a "full and fair" opportunity to litigate the exceptional case issue in the Central District proceedings, the Court finds that Convergence is estopped from denying the judgment entered in *Datatron* and holds that this is an exceptional case within the meaning of 35 U.S.C. § 285.

Accordingly, IT IS HEREBY ORDERED that:

1. Videomedia's motion for summary judgment is granted.

2. Convergence's motion for summary judgment is denied.

3. Videomedia shall lodge with the Court a judgment approved as to form by Convergence by May 17, 1982.