**W. R. GRACE & CO., INC., a corporation, Appellant,**

v.

**WESTERN U. S. INDUSTRIES, INC., a corporation, Appellee.**

**W. R. GRACE & CO., INC., a corporation, Appellant,**

v.

**E–T INDUSTRIES, INC., a corporation, and Pyramid Enterprises, Inc., a corporation, Appellees.**

Nos. 75–2574, 75–2563.

United States Court of Appeals, Ninth Circuit.

Oct. 9, 1979.

Rehearing En Banc Denied Dec. 27, 1979.

---

James W. Geriak, Lyon & Lyon, Los Angeles, Cal., for appellant.

Irwin C. Alter (argued), Alter & Weiss, Melvin E. Pearl, Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., Stuart Lubitz, Spensley, Horn, Jubas & Lubitz, George A. Maxwell, Los Angeles, Cal., Dennis Kinnaird, Munger, Tolles & Rickershauser, Los Angeles, Cal., for appellees.

Before CHAMBERS and GOODWIN, Circuit Judges, and FITZGERALD,* District Judge.

GOODWIN, Circuit Judge:

W. R. Grace & Co. appeals judgments of dismissal and the award of attorney's fees against it in consolidated actions that Grace

---

* The Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

brought against two defendants for patent infringement. We affirm.

Grace owns Design Patent No. 230,353, for a custom automobile wheel. In one action, Grace sued Western U. S. Industries, Inc. (Western). In the other action, Grace sued E–T Industries, Inc. and Pyramid Enterprises, Inc. for infringement. (E–T and Pyramid are both divisions of FDI, Inc., and will be referred to jointly hereafter as E–T.)

Mochel, an employee of Appliance Industries, Inc., was instructed by his superior to design a "street version" of a wheel depicted in a magazine artist's rendition of a Chaparral race car. Mochel borrowed much from the Chaparral design, but he made some changes. For example, rather than having the spokes of the wheel meet at the outer rim, he had them crisscross a short distance away from the rim, toward the center of the wheel. The effect was to eliminate starlike "points" from the rim area and create small triangles there instead. In addition, he increased the number of spokes, changed their draft angle, and thickened them toward the back of the wheel.

In September 1971, Appliance applied for a patent on Mochel's design. Appliance than assigned its rights in the design to Grace, incident to a liquidation and takeover of Appliance by Grace. This assignment set in motion a two-year application process in which the Patent Examiner twice rejected the design as unpatentable.

The first rejection came in November 1972. The examiner rejected the design as obvious in view of the prior art. He cited the Rader wheel, which appeared in a 1965 issue of *Sports Car Graphic* magazine, and also cited a patent issued to one Chandler.

In January 1973, Grace responded to the rejection by pointing out five alleged differences between the prior art cited and the Mochel design. In a February 1973 interview with the examiner, Grace showed photos of a Mochel-style wheel on an automobile. In March 1973, Grace amended its response to point out a sixth difference and to give sales figures for the pictured wheel.

The sales figures were submitted in an effort to show that Grace had enjoyed commercial success in marketing the design, thus bolstering its case for patentability.

In April 1973, the examiner again rejected the application. In addition to the Rader and Chandler wheels cited in the prior rejection, the examiner also referred to Burchard and Hibbard patents. Answering Grace's assertion of commercial success, the examiner said that, while such information is relevant in close cases, apparently impressive sales could be explained by factors other than novelty of design. Thus, the commercial success argument was rejected.

On July 3, 1973, Grace again responded. In another attempt to distinguish the prior art, it declared that it had created a novel combination of prior art elements in addition to its new elements. Returning to its earlier commercial-success argument, Grace submitted five affidavits from distributors of its wheels and an affidavit by Floyd Merritt, president of its Appliance division. These documents were to become crucial in the trial of these cases.

The affidavits of the distributors were virtually identical; all asserted that "[w]e [the distributor] have no particular advertising campaign as such for any of these wheels." The Merritt affidavit declared: "Our major advertising so far has been a one-page ad in *Car Craft,* when we first offered the Wire Mag wheel, in 1972." The trial court later held the Merritt affidavit to be false.

Between June 1972 and July 1973, Grace had run 18 advertisements for the Mochel wheels, spending more than $56,000 to reach consumer and industry audiences. In addition to several ads in *Car Craft* (maximum amount spent per ad: $3,470) were four ads in *Hot Rod* magazine, three of which were full pages and two of which cost more than $9,000 each, and an $8,000 ad in *Motor Trend.* While *Car Craft's* circulation is about 300,000, *Motor Trend's* is more than 600,000, and *Hot Rod's* is more than 800,000. Also included in the $56,000 advertising expense was $15,800 spent for

the production and printing of thousands of promotional kits, which included poster-size reproductions of one of its full-page color ads.

After Grace filed the controversial affidavits, Grace petitioned the examiner to "make the subject application special", thereby accelerating its processing. On October 4, 1973, the examiner allowed the patent to issue.

Grace commenced these actions, and demanded a jury trial in both. In the action against E–T, the demand was made later than 10 days after the last pleading was filed. Because the demand failed to comply with Fed.R.Civ.P. 38, Grace moved for relief under Fed.R.Civ.P. 39(b). The trial court could have granted a jury trial, in its discretion, despite Grace's failure to make timely demand. The court denied the motion and tried the two cases together, but to different finders of fact: the E–T case to the trial judge, the Western case to the jury.

After the close of Grace's case, the court directed a verdict for Western and entered a judgment of dismissal under Fed.R.Civ.P. 41(b) for E–T. The court found the design patent to be anticipated, obvious, authored by parties other than Mochel, procured by fraud on the Patent Office, and not infringed. The court also awarded fees and costs to both defendants on the ground that the case was "exceptional" within the meaning of 35 U.S.C. § 285, the attorney's fees section of the patent statute. This appeal followed.

### The "Unclean Hands" Defense

The Supreme Court has made fraud on the Patent Office in the procurement of a patent an equitable defense to an infringement action. *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 65 S.Ct. 993, 99 L.Ed. 1381 (1945). In *Precision Instrument,* the Court quoted as its "guiding doctrine" the equitable maxim that "he who comes into equity must come with clean hands." 324 U.S. at 814, 65 S.Ct. at 997. It stressed that patent monopolies are "issues

of great moment to the public," 324 U.S. at 815, 65 S.Ct. at 998, particularly suited to "the equity court's use of discretion in refusing to aid the unclean litigant." *Id. See also Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933).

That fraud on the Patent Office is also a defense to an action for damages caused by patent infringement is indicated by *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil of California v. United States,* 429 U.S. 17, 18, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). There, the fraud was an article written by the plaintiff's attorney, but fraudulently represented to be by another author. Not only did the article deceive the Patent Office, but it also deceived the Third Circuit, which in 1932 reversed a district court's finding of patent invalidity and ordered an accounting for damages. 59 F.2d 399. Several years later the fraud was uncovered, and the Third Circuit reversed itself and recalled its old mandate.

The Supreme Court affirmed the Third Circuit's turnabout. It declared that "[h]ad the District Court learned of the fraud on the Patent Office at the original infringement trial, it would have been warranted in dismissing Hartford's case." 322 U.S. at 250, 64 S.Ct. at 1003. It then held that the Third Circuit judgment of 1932 must be vacated, and that therefore "the case now stands in the same position as though Hartford's corruption had been exposed at the original trial. In this situation the doctrine of the *Keystone* case, *supra,* requires that Hartford be denied relief." 322 U.S. at 250–51, 64 S.Ct. at 1003. *See Norton v. Curtiss,* 433 F.2d 779, 793, 52 CCPA 1384 (1970) (fraud as complete defense to damages action under "unenforceability" language of 35 U.S.C. § 282(1)). *See also Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) (fraud on Patent Office as basis of claim under section 2 of Sherman Act); *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemi-*

*cal Corp.,* 407 F.2d 288, 294 (9th Cir. 1969) (dictum).

█ In the case before us, several factual grounds supported the trial court's determination that as a matter of law Grace had committed fraud on the Patent Office, and thus could not enforce its patent. Among them was the filing of the Merritt affidavit, which represented there had been minimal advertising for the Mochel wheels, while actually there was advertising far in excess of the single *Car Craft* advertisement discussed in the affidavit.

On appeal, Grace disputes these rulings. It declares that, at least insofar as it was a defense to patent validity, the question of fraud should have been left to the jury. Grace also argues that the evidence was insufficient to support a finding of fraud in any event, and that the court erred in excluding evidence highly probative of the state of mind of Merritt and other agents of Grace.

Merritt, president of Appliance, swore in his affidavit that the company's "major advertising so far [as of July 1973] has been a one-page ad in Car Craft." The evidence shows that this statement was made solely to dispel the expressed suspicions of the Patent Examiner that allegedly healthy sales of the Mochel wheels were due to forces other than novelty of design. Prior to the filing of this affidavit, and five others from distributors also representing the lack of any advertising campaign "as such", the examiner had steadfastly refused to approve the patent. Following the filing of this material, and a motion by Grace to accelerate the proceedings, the patent was granted. Grace admitted that its purpose in submitting the distributors' affidavits was to convey the idea that it had engaged in only a small amount of advertising; the only logical inference is that its purpose in filing the Merritt affidavit was identical. The Patent Office's reversal of its two earlier rejections upon receipt of these highly misleading affidavits leaves no doubt that they were material to, and a substantial cause of, the patent grant. There is overwhelming and undisputed evidence that the result was just what Grace intended. Therefore, the only issue that would even arguably merit jury consideration on a record such as this is the question of state of mind, or scienter.

A leading case discussing the scienter requirement for a finding of fraud on the Patent Office is this court's 1969 decision in *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Co., supra.* There, the court awarded attorney's fees to defendants in a patent infringement suit on the ground that the plaintiff had committed fraud on the Patent Office. *Monolith Portland's* view of the duty of patent applicants to be frank with the Patent Office, however, clearly has import beyond the attorney's fees context. It is also instructive on the question of scienter when defendants seek to assert fraud on the examiner as an affirmative defense. We held that the applicant did not have to be certain his or her statement was false or misleading in order to have failed in the duty of disclosure. The court found it sufficient that the plaintiff's "course of conduct * * * reveals a calculated recklessness about the truth." 407 F.2d at 297.

█ Merritt admits he erred in the affidavit, but insists it was only because he personally misunderstood his subordinates' reports about the advertising. Grace thus argues that there was a jury question presented on scienter. It is important to remember, however, that the plaintiff and patent holder here is not Merritt, but a corporation, Grace. Under well established agency doctrines a corporate principal is considered to know what its agents discover concerning those matters in which the agents have power to bind the principal. *See* Restatement (Second) of Agency § 272. And even when an agent has no reason to know the falsity of the representations he or she makes, the principal is liable if it knows the falsity and has reason to know the agent would make the statement. *See* Restatement (Second) of Agency § 256. Under these rules, Grace clearly must answer for intentional or reckless misrepresentation as a matter of law. The evidence

was undisputed that *some* agent of Grace had to know about the corporation's advertising for the wheels: thus, Grace must be said to have known it. And even if we assume that Merritt himself harbored no doubts about the truth of his affidavit—a dubious assumption on this record—the corporation, which knew the truth and had ample reason to know of Merritt's actions and statements, must be said as a matter of law to have known that the statements were false. In *Acme Precision Products, Inc. v. American Alloys Corp.*, 422 F.2d 1395 (8th Cir. 1970), the court followed *Walker Process Equipment Co. v. Food Machinery & Chemical Corp., supra,* and held that a corporation could be held liable under the antitrust laws for fraud on the Patent Office. The court held as a matter of law that the corporation knew of the falsity of its patent procurement tactics:

> "It is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself * * *." 422 F.2d at 1398.

With fraud on the Patent Office thus established, the Eighth Circuit remanded for a determination of other issues relevant to the antitrust cause of action.

In the case before us, Grace, through its Appliance division, was properly charged as a matter of law with knowledge of the extensive advertising program for the Mochel wheels. The statement of Appliance's president in an acknowledged effort to persuade the Patent Office was therefore fraud on the Patent Office. The infringement actions were properly dismissed as a matter of law on that ground.[1]

### Attorney's Fees

Grace also challenges the trial court's finding that the case was an "exceptional" one, in which the prevailing party is entitled to attorney's fees under 35 U.S.C. § 285. The attorney's fees issue presents the same questions as the defense of fraud on the Patent Office, but this court's standard of review is less stringent. The trial court's findings of fraud are reviewed closely because the directed verdict took the question from the jury. On the award of attorney's fees, this court defers to the trial court's discretion in determining fraud. *See, e. g., SSP Agricultural Equipment, Inc. v. Orchard-Rite Ltd.,* 592 F.2d 1096, 1102 (9th Cir. 1979). Cases involving fraud, "calculated recklessness", or bad faith in dealings with the Patent Office are precisely the "exceptional" cases for which section 285 is designed. *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., supra.* In light of this legal principle, the standard of review, and the evidence summarized above, there was no abuse of discretion in the award of attorney's fees in this case.

Affirmed.

---

1. Since we affirm the trial court on the affirmative defense of fraud, we need not reach the issue whether the trial court erred in refusing to grant the jury trial in the E–T case while allowing it in the Western case. Fraud on the Patent Office is a complete defense, and since the trial court properly held there was fraud as a matter of law, no jury determination of any issue was needed. Grace has not shown that the trial court's decision to split the factfinding chores led Grace to present its case any differently than if both cases were tried to the jury.