MARVIRAZON COMPANIA NAVIERA, S.A., Plaintiff-Appellee Cross-Appellant,

v.

H. J. BAKER & BROTHERS, INC., Defendant,

Atlantic & Gulf Stevedores, Inc., Defendant-Appellant Cross-Appellee.

No. 80–3844.

United States Court of Appeals, Fifth Circuit.

April 26, 1982.

Ralph E. Smith, New Orleans, La., for defendant-appellant cross-appellee.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert B. Fisher, Jr., Roderick M. McFaull, New Orleans, La., for plaintiff-appellee cross-appellant.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This suit was brought by Marvirazon Compania Naviera, S.A. (Marvirazon), against Atlantic & Gulf Stevedores, Inc. (A & G), and H. J. Baker & Bros., Inc. (Baker), the charterer, for damages to the cargo compartment of M/V CONSTANTINOS—a vessel owned by Marvirazon—allegedly

caused by stevedoring activity. The District Court entered findings of fact and conclusions of law granting Marvirazon $12,000 in damages against A & G, and Baker was dismissed without prejudice. A & G then brought this appeal, challenging the judgment on the basis of a non-mandatory tariff[1] which limited its liability for damages caused to vessels during stevedoring operations. Marvirazon filed a cross-appeal claiming error by the District Court in failing to address the issue of damages for its loss of use of the vessel, and for the award of reasonable attorney's fees and litigation costs. We affirm the District Court's holding that the limitation of liability clause set out in A & G's tariff does not apply to this claim, primarily because the charterer's (Baker) agent's knowledge cannot be imputed to Marvirazon. However, we remand to the District Court on the issue of damages for detention during which the repairs were made. Finally, we affirm the District Court's finding that each party is to bear its own attorney's fees and costs.

### Setting the Stage

Marvirazon entered into a charter party with Baker providing for the transport of phosphate rock aboard M/V CONSTANTINOS from Curacao to New Orleans at an agreed-upon rate. The charter provided for the appointment by the charterers of an agent at the port of discharge. Baker appointed Smith & Johnson Shipping, Inc. (Smith & Johnson) in New Orleans as charterer's agent. Discharge berth arrangements were made with the Public Bulk Terminal operated by A & G. During discharge of the cargo by use of heavy grabs and bulldozers, the vessel's holds sustained damages which were surveyed the next day.

The issues raised on this appeal are several. First, was Smith & Johnson an agent for Marvirazon such that the limitation provisions were enforceable against Marvirazon? If, for whatever reason, the limitation provisions do not apply, was the District Court in error in awarding damages only for vessel repair and not for loss of use? Finally, is Marvirazon entitled to an award of attorney's fees and litigation costs?

### Act I: Enter the Tariff

■ Clause 29 of the charter party provided:

> Agents at Curacao to be CURACAO TRADING COMPANY, P. O. Box 308, Willemstad, Curacao, D.W.I., Cable Address: "INDUSHIP", Charterers agents at discharging ports; Owners paying customary fees.

According to A & G, the above clause designated Baker's agents at the port of discharge as Marvirazon's agents. Under this construction of the clause, Smith & Johnson were acting for Marvirazon when they submitted an application to A & G requesting a berth assignment at the terminal for discharge of the phosphate. Because the application acknowledged that it was subject to all published tariffs and ordinances, including a limitation of liability clause for damage to vessels, A & G argues that it is relieved from liability for damage to Marvirazon's vessel. Although A & G agrees with the District Court that such non-mandatory tariff limitation clauses are not enforceable absent actual notice,[2] Smith & Johnson did have actual notice of the tariff and accepted its limitations. A & G urge that this acceptance was made in behalf of Marvirazon. Marvirazon argues that a fair reading of Clause 29 reveals that the agent at the discharging port, acting on behalf of the charterer, was to be the charterer's.

1. The limitation of liability provisions in the tariff, under which A & G brings this appeal, were not related to rates or charges and therefore were not required by law to be within the tariff. *See Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc.,* 542 F.2d 437, 441 (7th Cir. 1976); *citing Pacific S. S. Co. v. Cackette,* 8 F.2d 259, 260 (9th Cir.), *cert. denied,* 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426 (1925).

2. Refer to note 1, *supra.* Knowledge of the limitation clause cannot be imputed to Marvirazon simply by filing the tariff with the Federal Trade Commission, because it is not required by law to be in the tariff.

The only reference to Marvirazon was its obligation to pay customary fees. This practice, it is urged, was common and envisioned by the parties, and in no way suggests that Marvirazon was responsible to appoint and employ exclusively the New Orleans agent.

### Act II: Whose Agent?

Clearly, Smith & Johnson did act as Marvirazon's agent for some purposes. Because Marvirazon did not appoint an agent at the port of discharge, funds to pay port costs chargeable to owners were deposited with Smith & Johnson. In addition, after M/V CONSTANTINOS was damaged, Smith & Johnson assisted in the details incidental to that vessel's repair. Smith & Johnson were the agents representing Marvirazon insofar as the vessel's requirements to facilitate the charter agreement. Nevertheless, as far as obligations imposed on the charterer and the berth application were concerned, the charterer Baker was the principal on whose behalf Smith & Johnson acted. Baker selected the agent, and Marvirazon had no control over that selection. Likewise, Marvirazon exercised no control over the conduct of Smith & Johnson. We are in agreement with the District Court that Smith & Johnson was acting on behalf of Baker in its arrangements to discharge the cargo.

The critical issue is whether Smith & Johnson had the authority to bind Marvirazon in its acceptance of the tariff's limitation of liability for damage to vessels. Because Marvirazon neither selected nor exercised any control over Smith & Johnson with regard to obligations imposed on the charterer including berth arrangements, we find that Smith & Johnson lacked the actual authority to bind Marvirazon.[3] Moreover, we find no representations or conduct that could lead A & G to believe that Smith & Johnson represented Marvirazon, thus no apparent authority to bind is established.

Because of our conclusion that Smith & Johnson was not the agent for Marvirazon with regard to berth arrangements, we need not reach the issue of whether the tariff's limitation of liability provisions are unenforceable due to unconscionability.

### Act III: Damages for Detention

The District Court denied the claim by Marvirazon for loss of use of the vessel during the time it was undergoing repair of these discharging damages. In its findings and conclusions, however, the District Court did not mention this claim, which makes our review more difficult. At trial, the judge did remark that the testimony was "unresolvable in the sense that the ship's officers and its surveyors ascribe all of the damage to the stevedoring activity and the stevedoring surveyors ascribe essentially all of the disrepair to the fact that the ship has been in commerce for a long time...." A & G, the judge observed, argued that "the work done in the Port of New Orleans was essentially work that needed to be done, that had no relationship whatsoever to the discharge of the phosphate cargo here." The judge then concluded that it was impossible to determine what damage, if any, was caused by stevedoring activities, but he was "convinced that there was some." The judge went on to explain his belief that "a very substantial part of the down time ... is really not related to the errors or omissions of the stevedoring company." In brief, "some of [the] lay-over time was attributable [to the stevedores], but ... a majority of it is not attributable [to the stevedores]." The Court then took the matter under consideration, and issued its findings and conclusions without—we are convinced, inadvertently—any mention of damages for detention.

The total period during which Marvirazon lost the use of M/V CONSTANTI-

---

**3.** *See W. R. Grace & Co., Inc. v. Western U. S. Industries*, 608 F.2d 1214, 1218 (9th Cir. 1979), *cert. denied*, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980) (a principal is considered to know what its agents discover concerning those matters in which the agents have power to bind the principal), *citing* Restatement (Second) of Agency § 272. *But see Arnson v. General Motors Corp.*, 377 F.Supp. 209, 213 (N.D.Ohio 1974) ("An important element in determining the existence of an agency relationship is the existence of some degree of control over the conduct and activities of the supposed agent").

NOS due to repairs, from whatever source, was 9.6 days. Testimony at trial indicated that the physical condition of the vessel had deteriorated and that the vessel was in need of repair quite apart from the damages caused by A & G in its stevedoring activities. In *Skou v. United States*, 478 F.2d 343, 345 (5th Cir. 1973), this Court, repeating for perhaps the three-hundredth time, held that a shipowner that meets his burden of establishing that profits were lost while the vessel was detained for repairs is entitled to damages from the party causing the loss. If the damages caused by A & G to M/V CONSTANTINOS were minor so as not to affect the vessel's seaworthiness, and the repair thereof could reasonably have been deferred at Marvirazon's convenience until the next scheduled lay-up, then there was no necessity for immediate repair in New Orleans and the District Court could properly find no damages for loss of use. On the other hand, if the damages caused by A & G necessitated detention to make the vessel seaworthy and fit to carry cargo, e.g., in one or more cargo compartments, then Marvirazon would be entitled to detention losses for the period necessary to make those repairs. The fact that other repairs, unrelated to the stevedore damage, are accomplished during this time is of no significance to the extent that these owner repairs do not cause the vessel to be detained for a longer period of time. *Delta Marine Drilling Co. v. M/V BAROID RANGER*, 454 F.2d 128, 131, 1972 A.M.C. 312, 315 (5th Cir.).

Because the District Court did not make a specific finding as to the necessity of repair and the amount of time needed to make the repairs related to stevedoring activity by A & G, and because the record does not permit us to make an initial finding as a substitute for this oversight, we remand on this issue. We emphasize that we neither imply nor intimate any possible view on this remanded issue.

### Postlude: Attorneys' Fees and Court Costs

On its cross-appeal, Marvirazon also claims entitlement to an award of attorney's fees and litigation costs. Under Louisiana law, attorney's fees are not allowed unless specifically provided for by contract or by statute. *Ogea v. Loffland Bros. Co.*, 622 F.2d 186, 190 (5th Cir. 1980); *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir. 1980). Therefore, we affirm the District Court's finding that each party in this controversy is to bear its own costs with no recovery of attorney's fees.

All is over save the remanded issue of detention loss, if any.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.