**MORROW CRANE COMPANY, an Oregon corporation, Plaintiff,**

**v.**

**AFFILIATED FM INSURANCE COMPANY, a Rhode Island corporation, Defendant.**

**Civ. No. 86–651–MA.**

United States District Court, D. Oregon.

Oct. 20, 1987.

Alex L. Parks, Parks, Allen, Livingston & Greif, Portland, Or., for plaintiff.

Kenneth E. Roberts, P.C., Richard J. Kuhn, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., Harry A. Gavalas, Chalos, English & Brown, P.C., New York City, for defendant.

OPINION

MARSH, District Judge.

Plaintiff Morrow Crane filed this claim in admiralty seeking recovery from Affiliated FM Insurance Company under a marine insurance cargo policy. This court has jurisdiction pursuant to 28 U.S.C. § 1333 (1982). A bench trial was held July 29, 1987. This opinion constitutes my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 in favor of the defendant.

FACTS

Morrow Crane is a dealer in heavy machinery, principally large cranes, and is headquartered in Salem, Oregon. Defendant Affiliated FM Insurance Company (hereinafter "FM") is an insurance company headquartered in Rhode Island that writes marine insurance in various states including Oregon.

On February 9, 1983, FM issued an open marine cargo policy insuring plaintiff against physical loss of or damage to the goods and merchandise of plaintiff which consisted principally of cranes, crane parts

and crane booms subject to various conditions and exclusions.[1] This form of policy provides coverage for loss or damage to goods during shipment and for a reasonable period thereafter under "warehouse to warehouse" coverage. The insured triggers coverage of the policy by giving notification through a "declaration" to the insurer of the shipment and pertinent details concerning it. Under the terms of this policy, all such declarations were to be made to Northwestern Risk Specialists, an agent of the insurer. A normal practice under such a policy was to make the declaration in the month following the month in which the shipments for the account of the insured are made.

This particular claim stems from a shipment on November 1, 1984 of cranes purchased by plaintiff from a German manufacturer. Morrow Crane had presold the cranes and needed to deliver them to their customer by December 15, 1984. Morrow Crane had a contract with Zuest & Bachmeier (hereinafter "Z & B"), an independent forwarding agent headquartered in Germany, to handle this type of shipment for it. Morrow Crane's business relationship with Z & B extended back at least to June, 1981. In June, 1981, Morrow Crane instructed Z & B that all seafreight shipments for its equipment were to be shipped "under deck" for insurance reasons.

Z & B booked this particular shipment on board the M/V Macaye, a Spanish flag ship which was owned and operated by Euram Lines & Navigation. The cranes, crane parts and crane booms were loaded on the vessel at Brake, Germany. For reasons not clear, all of the machinery was loaded "on deck."

Z & B also carried an open cargo policy with Colonia Versicherung (hereinafter "Colonia"), a German insurance company. After shipping the cranes, crane parts and crane booms on deck, Z & B caused a certificate to be issued under its policy to Morrow, providing "on deck" coverage. This certificate bore the legend "against all risks which may arise due to deck stowage."

The vessel departed Brake on November 21, 1984. During the course of the voyage, plaintiff's cargo was damaged by heavy seas and weather. The damage was partial damage or "particular average" and was not a total, or constructive total loss of the cargo. After stopping in Florida, the vessel arrived at the port of destination, Houston, Texas on December 19, 1984. The ship and cargo were unloaded and stored in Morrow Crane's warehouse and an open storage area in Houston.

After the damage to the shipment was discovered by Morrow Crane, Morrow Crane reported it to FM and claimed a loss. FM rejected the claim. Morrow then sought recovery under the Colonia policy that had been procured by Z & B. The claim against Colonia was ultimately settled for $70,000.

After unloading the cranes, plaintiff contends the cranes suffered further damage and required further repairs. The parties have stipulated that the amounts of the repairs are reasonable. However, defendant denies that the subsequent repairs and labor charges incurred after the initial repair charges are related to the ocean shipment of the cranes. Plaintiff agrees that any recovery for damages to the cranes is to be offset by $70,000.

1. Clause 17 provides:
(a) Cranes, Crane Parts, and Crane Booms in approved export packing are insured:
Against all risks of physical loss or damage from any external cause irrespective of percentage (but excluding those risks excepted by F.C. & S. & S.R. & C.C. Warranties, unless otherwise provided herein); however, each claim for loss or damage shall be adjusted separately and from the amount of the claim, as adjusted, there shall first be deducted the sum of One Thousand Dollars ($1,000), each shipment separately insured.

NOTE: This deductible shall apply to all shipments by whatever conveyance used.
(b) Merchandise and/or Goods while on deck ocean vessel under an "on deck" bill of lading are insured:
Warranted free from Particular Average unless caused by the vessel and/or interest insured being stranded, sunk, burnt, on fire or in collision with other ship or vessel or with ice or with any substance other than water, but liable for jettison and/or washing overboard, irrespective of percentage.

## DISCUSSION

The crux of plaintiff's argument is that the shipment of the cargo "on deck" without plaintiff's consent is a fortuitous circumstance and as such is covered under the "all risk" coverage in Clause 17(a) of the policy. As authority plaintiff cites *Ingersoll Milling Machine Company v. M/V Bodena, et al*, 619 F.Supp. 493 (S.D.N.Y. 1985) *affirmed*, 829 F.2d 293 (2nd Cir.1987). Plaintiff concedes there is no recovery under the "on deck warranty provision," Clause 17(b), as there was only partial damage.

Here, plaintiff has established the existence of the policy and Clause 17(a) which provides coverage "against all risks of physical loss or damage from an external cause irrespective of percentage ..." Plaintiff contends that the damages to the cranes by the placement by the forwarding agent of the cranes "on deck" rather than "under deck" as per their instructions is a "risk ... from an external cause." Plaintiff has established the existence of the partial damage to the cranes and the parties have further stipulated to the costs of repairs.

After plaintiff has established a prima facie case, the burden shifts to the defendant to show that the coverage of the loss comes within one of the exclusions. Defendant argues that the all risk provision of Clause 17(a) only applies to goods shipped under deck. The titles to the average clauses are encaptioned "under deck" for the all risk Clause 17(a) and "on deck" for the particular average Clause 17(b). Further, defendant contends, the "on deck warranty" Clause 37 states that all cargo "is understood to be under deck unless otherwise expressly stated at time of declaration."[2] Here, defendant argues that it is an agreed fact that plaintiff did not make any such express statement at the time of declaration and paid the premium due under the policy for "under deck" shipment. Accordingly, defendant contends plaintiff had elected coverage under 17(a) and as the shipment was not made "under deck" as understood, there is no coverage.

Plaintiff responds by arguing that the words "understood to be under deck" are vague and can only be interpreted as a recognition by both parties that shipments could inadvertently be shipped on deck but that Morrow Crane was warranting their understanding that shipments would be made under deck. Further, plaintiff points to *Ingersoll* as direct authority on the issue at bar. *Ingersoll*, 619 F.Supp. 493.

Defendant distinguishes *Ingersoll* by arguing in that case there was not a second insurance policy, the wording of the policies is significantly different and the *Ingersoll* policy did not contain an "on deck warranty" clause as exists in the policy at bar.

■ Marine insurance contracts are governed by federal admiralty law when there is an established federal rule, and by state law when there is not. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–314, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955) *reh'g denied* 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243.

■ Words used in insurance contracts are to be interpreted in their plain and ordinary sense, and any claim of ambiguity cannot be based on a strained interpretation of the terms of the policy. *See Connick v. Teachers Ins. And Annuity Ass'n. of America*, 784 F.2d 1018, 1020 (9th Cir. 1986) *cert. denied*, 479 U.S. 822, 107 S.Ct. 91, 93 L.Ed.2d 43. When interpreting an insurance policy, intent of parties and the reasonable expectations of the insured are considered. *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir.1985). Whereas coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, exclusionary clauses are construed narrowly against the insured. *Id.* If an insurance contract is ambiguous, it will be generally construed against the insurer who drafted it in order to promote coverage for losses

---

**2.** Clause 37 provides:

Warranted all property insured hereunder is understood to be Under Deck, unless otherwise expressly stated at time of declaration.

to which the policy relates. *Insurance Co. of North America v. Howard,* 679 F.2d 147, 150 (9th Cir.1982). These principles apply to all types of insurance policies including maritime policies. *Kalmbach, Inc. v. Insurance Co. of Pa.,* 529 F.2d 552, 555 (9th Cir.1976).

The *Ingersoll* court allowed coverage for particular average damage resulting from an "on deck" shipment based on the "under deck" all risk provision of the marine cargo policy. *Ingersoll,* 619 F.Supp. 493. The plaintiff in *Ingersoll* convincingly argued that it was entitled to coverage because it booked an "under deck" shipment and the "on deck" shipment was unauthorized. *Id.* at 506. Since the time of trial, *Ingersoll* has been affirmed. *Ingersoll,* 829 F.2d 293 (2nd Cir.1987).

While defendant's rationale for distinguishing *Ingersoll* is not convincing, there is one distinguishing fact in this case which I feel is determinative. Plaintiff argues that the various clauses of the policy are ambiguous and must be construed in its favor. Since the language in the policy at bar and the language in the policy in *Ingersoll* are almost identical, I find the analysis in *Ingersoll* to be persuasive. The insurance policy at bar is an all purpose marine policy which provides coverage for both shipments made "on deck" and for shipments made "under deck." The policy was meant to provide coverage as specified when shipments occurred under either condition.

■■ As in *Ingersoll,* I find that the shipping contract between the shipper and vessel is determinative of which policy provision applies. *Ingersoll,* at 307. The declaration made to the effect that the shipment was made "under deck," the fact the premium was paid according to that provision and the warranty clause are not persuasive.

■■ A principal is bound by acts of his agent where the acts are within the scope of agent's apparent or actual authority. *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d 1431, 1438 (9th Cir.1986) *cert. denied,* 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58. A principal is considered to know what its

agents discover concerning those matters in which the agents have the power to bind the principal. *W.R. Grace & Co., Inc. v. Western U.S. Industries, Inc.,* 608 F.2d 1214, 1218 (9th Cir.1979) *cert. denied,* 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980).

Here, Z & B acted as the agent of Morrow Crane pursuant to a long term freight forwarding contract. The parties agree that the shipment was made "on deck" by Z & B and the bill of lading further reflects this type of shipment. Z & B purchased further insurance from Colonia solely because the shipment was made on deck. Morrow Crane's actual awareness of the decision to ship on deck and to obtain additional insurance is irrelevant. As this shipment was made "on deck" through the arrangements of a long time agent of the shipper and these arrangements are evidenced by the purchase of other insurance for "on deck" coverage and a bill of lading stamped "carried on deck ...," the applicable policy provision under the FM policy is Clause 17(b) "on deck" coverage. The warranty provision of the policy does not vary the fact that the confusion brought about was a result of the acts of the shipper's agent. Thus, Clause 37 is not applicable.

*Ingersoll* is distinguishable from the facts at bar because the shipping arrangements in *Ingersoll* were made by the ship's agent. The shipper and freight forwarding agent in *Ingersoll* intended that the shipment be made "under deck" and specifically stated that it not go "on deck." The error there was made in the communication between the ship's general agent and the broker/steamship agent. In the facts at bar the shipping arrangements were made by the agent of the shipper. Here, the freight forwarder, acting as agent for Morrow Crane, allowed the shipment "on deck."

In *Ingersoll,* the all risk under deck provision was held applicable because the shipper intended the cargo to be "under deck" and by the fortuitous acts of the ship's agent the cargo was shipped on deck. In this case, there was no fortuitous event or act by a third party or the carrier. The

shipper, through its agent, intentionally shipped the cargo on deck. The policy provision thus in effect is Clause 17(b). As that provision does not provide for "particular average," there is no coverage.

## CONCLUSION

Thus, I find on behalf of FM. Accordingly, I do not reach the issue of co-insurance or damages.

## JUDGMENT

Based on the record,

IT IS ORDERED AND ADJUDGED that plaintiff take nothing and the action is DISMISSED.