**MORROW CRANE COMPANY,**
Plaintiff–Appellant,

v.

**AFFILIATED FM INSURANCE COMPANY, Defendant–Appellee.**

No. 88–3553.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1989.

Decided Sept. 14, 1989.

William P. Horton, Parks, Allen, Livingston & Greif, Portland, Or., for plaintiff-appellant.

Ridgway K. Foley, Jr., Schwabe, Williamson & Wyatt, Portland, Or., for defendant-appellee.

Before BROWNING, WALLACE and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiff Morrow Crane Company (Morrow) appeals the district court's judgment after trial in favor of defendant Affiliated FM Insurance Company (FM Insurance) in a dispute over insurance coverage. 686 F.Supp. 265. We affirm.

## FACTS

Morrow, headquartered in Salem, Oregon, is the exclusive United States distributor of large cranes manufactured in Germany by Leibherr, A.G. FM Insurance issued a policy to Morrow insuring against physical loss or damage to Morrow's cranes during ocean shipment.

The insurance policy contains the following terms relevant to this proceeding:

Average Clauses

(Under deck) 17. (a) Cranes, Crane Parts, and Crane Booms in approved export packing are insured: Against all risks of physical loss or damage from any external cause irrespective of percentage (but excluding those risks excepted by F.C. & S. & S.R. & C.C. 'Warranties, unless otherwise provided herein); however, each claim for loss or damage shall be adjusted separately and from the amount of the claim, as adjusted, there shall first be deducted the sum of One Thousand Dollars ($1,000.), each shipment separately insured.'

Note: This deductible shall apply to all shipments by whatever conveyance used.

(On deck) (b) Merchandise and/or Goods while on deck ocean vessel under an "on deck" bill of lading are insured:

Warranted free from Particular Average unless caused by the vessel and/or interest insured being stranded, sunk, burnt, on fire or in collision with other ship or vessel or with ice or with any substance other than water, but liable for jettison and/or washing overboard, irrespective of percentage.

Morrow contracted with Zuest & Bachmeire of Switzerland, Inc. (Z & B), an independent freight forwarding agent, to handle shipments of Liebherr cranes for Morrow. Since June 1981, Z & B has operated under express written instructions from Morrow:

ALL SEA FREIGHT SHIPMENTS OR EQUIPMENT MUST BE SHIPPED "BELOW DECK". FOR INSURANCE REASONS IT IS MANDATORY THAT [ON] ALL BILLS OF LADING THERE IS WRITTEN THAT THE CARGO IS SHIPPED BELOW DECK.

Z & B booked the shipment in question with Euram Lines (Euram), with whom Z & B had a freight contract. Pursuant to this freight contract, Euram was to stow shipments below deck, but reserved the right to stow on deck if necessary.

On this particular voyage, Euram also booked a shipment of steel. Euram decided to stow Morrow's cargo of cranes on deck to facilitate the discharge of the steel. Z & B became aware that the Morrow shipment of cranes had been stowed on deck only after the vessel had left Germany for the United States, when Z & B received the bill of lading containing the stamped notation "Carried on Deck without Liability for Loss or Damage Howsoever Caused." After discovering that the shipment had been stowed on deck, Z & B obtained an insurance policy covering damage for on-deck shipments through a German insurer, Colonia, without Morrow's knowledge. This policy covered the shipment "against all risks which may arise due to deck stowage."

The cranes suffered damage from heavy seas and weather while in transit. The damage was partial or, in the jargon of the business, "particular average." When the carrying vessel arrived in Houston, the cranes were unloaded and stored by Morrow. After the damage to the shipment was discovered, Morrow made a claim to FM Insurance which was rejected on the grounds that the loss was specially insured by Morrow's agent under the Colonia policy, and that the goods had been shipped on deck and, therefore, were not covered under Clause 17(b) because the cranes sustained only partial damage.

Morrow then sought recovery under the policy issued by Colonia. Morrow settled with Colonia for $70,000. In return, Morrow released Colonia and Z & B from any and all liability resulting from this ship-

ment.[1] Morrow brought this action against FM Insurance to collect on its insurance claim. FM Insurance continued to deny coverage.

After trial, the court found that the damaged cargo was not covered under the policy because Z & B, acting as Morrow's agent, intentionally shipped the cargo on deck, foreclosing coverage under Clause 17(a). Morrow filed a motion for a new trial, which the district court denied. Morrow appeals the district court's judgment and denial of its motion for a new trial.

## DISCUSSION

 The district court's findings of fact may be reversed only if clearly erroneous. Fed.R.Civ.P. 52(a). Whether the acts of an agent are within the scope of its authority is a factual determination, *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1295 (9th Cir.1982), as is a finding of negligence. *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.1984) (en banc). The interpretation of a contract is a mixed question of law and fact. The district court's analysis of contractual language and its application of principles of contract interpretation are reviewed *de novo*. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985). Marine insurance contracts are governed by federal admiralty law when an established federal rule exists, and by state law when one does not. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14, 75 S.Ct. 368, 370–71, 99 L.Ed. 337 (1955); *Ahmed v. American S.S. Mutual Protection & Indemnity Ass'n*, 640 F.2d 993, 996 (9th Cir. 1981).

The central issue in this case is whether Clause 17(a), as Morrow contends, or 17(b) applies to this shipment of cranes. Morrow concedes that if Clause 17(b) applies there can be no recovery, because the cranes sustained only partial damage.

The Second Circuit, construing virtually identical contractual language, has concluded that in determining which of these two

clauses to apply, neither the actual place of physical storage nor the bill of lading are determinative. Instead, the contract of carriage governs. Thus, when the insured has contracted with its carrier for shipment of cargo below deck, Clause 17(a) applies, even if the cargo is shipped on deck. *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 306–07 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988).

In *Ingersoll*, the insured contracted with the agent of the carrier to ship cargo under deck. The carrier breached this contract by shipping the goods on deck. *Id.* at 299–301. The case before us differs from *Ingersoll* in that here the underdeck contract was between the insured and its own agent, not between the insured and an agent of the carrier. Morrow argues that the relevant contract is its contract with Z & B that required under-deck carriage, not the contract between Z & B and the carrier that allowed on-deck carriage if necessary. If the Morrow/Z & B contract controls, under *Ingersoll*, Clause 17(a) would apply to this shipment—indeed, to all shipments arranged for Morrow by Z & B. Conversely, if the Z & B/carrier contract controls, *Ingersoll* would compel application of Clause 17(b).

 We conclude that the contract in this case to which the rule of *Ingersoll* applies is the contract between the insured's agent and the carrier, not the contract between the insured and its agent. Well-settled principles of agency law bind Morrow to its agent's contract with the carrier. A principal is bound by the acts of its agent if those acts are within the scope of the agent's actual or apparent authority, unless the third party has actual notice that the acts are unauthorized. *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1438 (9th Cir.1986). A principal is also deemed to know what its agent knows concerning those matters in which the agent has the power to bind the principal. *W.R. Grace &*

**1.** The parties have stipulated that any recovery for damage to the cranes is to be reduced by the

$70,000.

*Co. v. Western U.S. Industries, Inc.*, 608 F.2d 1214, 1218 (9th Cir.1979).

In light of Morrow's express instructions to Z & B to arrange shipment under deck, it is not readily apparent that Z & B had actual authority to approve on-deck shipment.[2] However, the apparent authority of a freight forwarding agent such as Z & B is customarily quite broad, *United States v. Ventura*, 724 F.2d 305, 310–11 (2d Cir.1983), and in our view will generally encompass the decision to permit shipment on deck. There is nothing in the record to indicate that Euram was not entitled to rely on Z & B's apparent authority.

Morrow argues that *C.H. Leavell & Co. v. Fireman's Fund Insurance Co.*, 372 F.2d 784 (9th Cir.1967), compels a different result. That case construed an "all risks" insurance policy in the context of the construction of a bridge. Employees of a subcontractor performed a certain task contrary to the specifications for the job, with disastrous results. The insurance company argued that the employees' acts were to be imputed to the employer. We rejected this theory as a defense to coverage. *Id.* at 788–89. Although an employee's negligence may be imputed to the employer in an action by an injured third party, there is no reason to apply this rule in an action by the employer to recover from the insurance company for the loss it suffered. *Id.*

Morrow argues that Z & B's actions should similarly not be imputed to it in this case. Just as the policy in *C.H. Leavell & Co.*, protected the insured against the negligence of its own employees, Morrow argues that the policy issued it by FM Insurance protects it against Z & B's disregard of its instructions. Were FM Insurance to defend against a hypothetical claim brought under Clause 17(b) on the ground that Z & B was negligent in permitting on-deck shipment, *C.H. Leavell & Co.*

might well support Morrow's assertion that its agent's negligence is not a defense to coverage. *Id.* at 789. But this is not the defense FM Insurance has posed. Rather, FM Insurance points out that under its policy Morrow was free to ship on deck or under deck, but that Morrow's choice would have consequences in the amount and type of coverage available in the event its cargo was damaged. Because Morrow, through its agent, chose to permit the cargo to be shipped on deck, Clause 17(b) controls rather than Clause 17(a).[3]

## CONCLUSION

We hold that the question of whether Morrow's cargo is covered by Clause 17(a) or Clause 17(b) is determined by the terms of the contract between its agent and the carrier. Because that contract permitted the carrier to ship on deck, Clause 17(b) rather than Clause 17(a) applies. The judgment of the district court is affirmed.

AFFIRMED.

---

**2.** Z & B maintained a freight contract with Euram entitling Euram to ship on deck if necessary. There is evidence in the record that Z & B had allowed on-deck shipment on two or three prior occasions, but it is not clear whether Morrow approved such shipments.

**3.** Alternately, Morrow contends there has been no showing that Z & B was either negligent or willful because, it claims, Z & B did not give

Euram any instructions, improper or otherwise. Morrow argues that it was the fortuitous act of the carrier, not Z & B, that caused the on-deck shipment. Morrow acknowledges, however, that the contract between Z & B and Euram permitted on-deck shipment at Euram's discretion. Morrow's argument that Z & B gave no instructions to Euram lacks merit in light of this contract.