IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No.99-30097

CYNTHIA ARMIT, wife of/and JOHN ARMIT,

Plaintiffs,

VERSUS

ELENI INTERNATIONAL, SHIPPING, S.A.,
SAFETY MANAGEMENT OVERSEAS, S.A.,

Defendants-Cross-Defendants-
Appellees,

VERSUS

BUNGE CORPORATION,

Defendant-Cross-Claimant-
Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana

January 21, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and DUPLANTIER,[%]
District Judge.

DUPLANTIER, District Judge:

---
[%] District Judge of the Eastern District of Louisiana,
sitting by designation.

This appeal presents the issue of whether Blue Water Shipping

Company (Blue Water), the agent for the time charterer of the M/V

ELENI, had actual or apparent authority to bind Eleni International

Shipping, S.A. (Eleni), the owner of the M/V ELENI, or Safety Management Overseas, S.A. (Safety), the operator/manager of the vessel, to the indemnification and defense provisions of a dock tariff incorporated by reference into the berth application for the vessel. The district court granted summary judgment in favor of Eleni and Safety. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Messrs. Fratelli D'Amato, the time charterer of the vessel, designated the grain elevator owned by Bunge Corporation (Bunge) as the loading facility for the vessel and appointed Blue Water as its agent at the loading port. Thereafter, Blue Water facilitated the berthing of the vessel at the Bunge dock. Roy Sergi, an operations agent for Blue Water, signed the Application for Berth for the vessel. When the vessel experienced engine problems and was unable to berth as scheduled, a representative of Blue Water notified Bunge of the situation. Bunge then advised Blue Water that a new berth application and Notice of Readiness would have to be filed before the vessel could berth at the Bunge facility. After the vessel's engine problems were resolved, a representative of Blue Water signed and filed a new Application for Berth and Notice of Readiness, and the M/V ELENI then docked at the Bunge facility.

While preparing to load grain aboard the vessel, John Armit, a longshoreman employed by River Rentals Stevedoring, Inc.(River Rentals), was injured. In a letter addressed to Bunge and River Rentals, and copied to Blue Water, the master of the ELENI denied responsibility for the accident. Blue Water, at the request of the

master, faxed the letter to Bunge.

The injured longshoreman and his wife filed suit against Eleni, Safety, and Bunge seeking damages for the injuries and losses they sustained. Bunge filed a cross-claim against Eleni and Safety for indemnification and defense costs pursuant to Bunge Corporation Grain & Dock Tariff No. 9 (Dock Tariff No. 9) which was incorporated by reference into the Application for Berth executed by Blue Water.[1]

The district court granted summary judgment in favor of Eleni and Safety on the Armits' claims as well as on Bunge's cross-claim

---

[1]Bunge Corporation Grain & Dock Tariff No. 9 provides in pertinent part:

> Any and all vessels and their owners and operators shall assume sole responsibility and liability for injury to or death of any person whomsoever, or damage to or destruction of any property incident to, arising out of or in connection with (i) the vessel, its crew or its agents or licensees entering upon or using elevator property; (ii) the vessel, its crew or its agents or licensees having custody of or using or operating elevator equipment; or (iii) operations, acts or omissions of the vessel, its crew or its agents or licensees; and any and all vessels and their respective owners and operators shall protect, indemnify and save the elevator harmless from and against any and all suits, claims, damages or liabilities for or in respect of the same, whether based on a theory of tort, contract, warranty, strict liability or absolute liability, by operation of law or otherwise, including, without limitation, all suits, claims, damages or liabilities alleged to have been caused by the elevator's sole, comparative or contributory negligence or fault. The foregoing applies at all times, including but not limited to, while the vessel is berthed at the elevator dock and/or during berthing at and departing from the elevator dock.

for indemnification and defense costs.[2]  Bunge appeals the order
and judgment dismissing its cross-claim.

## II.  STANDARD OF REVIEW

We review the grant of a motion for summary judgment *de novo*.
*Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). "[W]e apply the
same standard as that used by the district court, viewing the facts
and drawing inferences in favor of the non-moving party." *Chamrad
v. Volvo Cars of North America*, 145 F.3d 671, 672 (5th Cir. 1998).
Summary judgment is properly granted only when there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law. Fed.R.Civ.P. 56(c), *Celotex
Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91
L.Ed.2d 265 (1986).

## III.  ANALYSIS

It is undisputed that the Dock Tariff No. 9 is not a mandatory
tariff. Therefore, its provisions are enforceable against Eleni
only if Eleni, or an agent acting on Eleni's behalf, contractually
assumed the obligations set out in the tariff.  Bunge contends that
Blue Water accepted the terms of the  tariff as the agent for
Eleni.  Eleni argues that Blue Water had no authority, express or
implied, to act on its behalf.

In determining whether an agency relationship exists between
the vessel owner and the vessel charterer's agent, the following
facts are relevant: (1) who selected the agent, (2) whether the

---

[2]The interests of Eleni and Safety are identical.  They will
be referred to collectively as Eleni.

4

owner exercised control over the selection of the agent, and (3) whether the owner exercised control over the agent. *Marvirazon Compania Naviera, S.A.*, 674 F.2d 364, 367 (5ᵗʰ Cir. 1982). Where the vessel owner did not select the agent and exercised no control over the agent "with regard to obligations imposed on the charterer including berth arrangements," the charterer's agent lacks actual authority to bind the vessel owner. *Id.*

The charterer, not Eleni, selected Blue Water as the agent at the loading port. There is no evidence that Eleni exercised any control over the charterer in its selection of Blue Water as its agent or that Eleni exercised any control over Blue Water. There is a complete lack of evidence that Blue Water had actual authority to act on behalf of Eleni.

However, even absent actual authority to act on behalf of Eleni, acts by Blue Water bind Eleni if Blue Water had apparent authority to act on Eleni's behalf. "Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him." *Cactus Pipe & Supply Co., Inc. v. M/V MONTMARTRE*, 756 F.2d 1103, 1111 (5ᵗʰ Cir. 1985), citing Restatement (Second) of Agency §27.

To prove apparent authority, Bunge must present evidence that Eleni engaged in some conduct which Bunge could reasonably interpret as a representation to it that Blue Water was Eleni's agent and that as a direct consequence thereof Bunge reasonably

5

relied on Blue Water's purported authority. *See Crescent City Marine, Inc. v. M/V NUNKI*, 20 F.3d 665, 669 (5th Cir. 1994), *Richard A. Cheramie Enterprises v. Mt. Airy Refining Co.,* 708 F.2d 156, 158 (5th Cir. 1983). The record contains no evidence of such conduct.

Bunge points to the following acts in support of its contention that Blue Water had apparent authority to act on behalf of Eleni: 1) a representative of Blue Water signed the berth applications for the vessel and provided advance dockage funds; 2) a representative of Blue Water notified Bunge that the vessel would not berth as originally scheduled; 3) the master of the vessel authorized a representative of Blue Water to sign the bills of lading; 4) a representative of Blue Water signed the "Statement of Facts"; and 5) a representative of Blue Water forwarded to Bunge a letter from the master of the vessel denying responsibility for the accident.

Either a charterer or a vessel owner, or an agent acting on behalf of either, can make berthing arrangements for a vessel and sign a berth application. Thus Blue Water's actions in arranging for the berthing of the vessel, signing the  berth applications, and providing advance dockage funds, provided no basis for Bunge to conclude that Blue Water was acting on behalf of Eleni.  Moreover, this activity was not conduct by Eleni.

Nor can the fact that the master of the vessel authorized a representative of Blue Water to sign bills of lading on his behalf be reasonably construed as a representation by Eleni that Blue Water was authorized to accept the tariff provisions on its behalf.

6

That authorization, on its face, unambiguously restricts Blue Water's authority to the signing of bills of lading "in accordance with all terms and conditions of governing charter party...." Considering the limited nature of the authority conveyed by that authorization, Bunge could not have reasonably relied on it to conclude that Blue Water had authority to accept the terms of Dock Tariff No. 9 on behalf of Eleni.

Moreover, the master's conduct in authorizing Blue Water to sign bills of lading did not occur until after the berth application which incorporated the indemnity and defense provision at issue was executed. Clearly, Bunge could not have relied upon that later conduct to conclude that Blue Water was acting as Eleni's agent at the earlier date. The same analysis applies to several other of Bunge's contentions, including that related to the "Statement of Facts", which was signed by Blue Water after the berth application was executed.

For the same reason, we conclude that Bunge, at the time that the berth application was executed, could not have relied upon the fact that the master subsequently transmitted his denial of liability letter through Blue Water as an indication of Blue Water's authority to accept the provisions of the dock tariff on behalf of Eleni.

Alternatively, relying solely upon the affidavit of James Giangrosso, a supervisor for River Rentals, Bunge contends that even as a non-signatory to Dock Tariff 9, Eleni is bound by the tariff because it had notice of the provisions. While it is true

7

that Mr. Giangrosso's affidavit states that he delivered documentation including the tariff to the master or an officer of the ELENI, there is no dispute that this took place after the singing of the berth application and the docking of the vessel. Obviously, this evidence cannot establish that Eleni had notice of the tariff provision prior to the time that the vessel berthed.

## IV. CONCLUSION

For the foregoing reasons the judgment of the district court is affirmed.